## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHANNA J. SHAW, | |
| **Plaintiff,** | |
| v. | **Case No.  18-2513-DDC-GEB** |
| T-MOBILE, | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff Shanna J. Shaw's Motion for Summary Judgment (Doc. 38).[1]  Defendant T-Mobile USA Inc. has responded (Doc. 42).  Plaintiff never replied and the time to do so has expired.  For reasons explained below, the court denies plaintiff's motion.

### I.     Procedural History

Plaintiff brings employment discrimination and related claims against defendant under (1) Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, (2) 42 U.S.C. § 1981, (3) the Americans with Disabilities Act Amendments Act ("ADAAA"), (4) 42 U.S.C. §§ 12101–12213, the Kansas Act Against Discrimination ("KAAD"), Kan. Stat. Ann. §§ 44-1001–44-1013, and (5) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219.  Doc. 36 at 1, 4; Doc. 64 at 17.[2]  She asserts that defendant discriminated against her based on her race,

---

[1]     Plaintiff proceeds pro se.  Because plaintiff proceeds pro se, the court construes her filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court does not assume the role of advocate for a pro se litigant.  *Hall*, 935 F.2d at 1110.

[2]     Plaintiff's summary judgment motion also refers to the Genetic Information Nondiscrimination Act, the Equal Pay Act, and breach of contract, but she did not plead those claims in her First Amended

sex, and disability, and ultimately wrongfully terminated her employment because she was pregnant. Doc. 36 at 2–3.

Plaintiff filed her Complaint on September 24, 2018. Doc. 1. She also moved the court to appoint counsel for her. Doc. 4. Judge Birzer, the United States Magistrate Judge assigned to this case, denied plaintiff's motion seeking appointment of counsel, without prejudice to refiling. Doc. 5. After the initial scheduling conference, Judge Birzer reconsidered plaintiff's request for counsel. Doc. 15 at 2–3. She also set deadlines for the parties to exchange Rule 26 disclosures and ordered mediation. *Id.* at 2, 4.

Shortly after the initial scheduling conference, the court appointed provisional counsel "for the limited purpose of advising and assisting [p]laintiff in preparing and participating in mediation." Doc. 17 at 2. When mediation failed, the court allowed plaintiff's provisional counsel to withdraw. Docs. 27, 30. The court also allowed plaintiff to file a First Amended Complaint. Doc. 35.

On November 22, 2019, the court entered a Revised Scheduling Order. Doc. 34. The court recognized that the parties "already have served their initial disclosures" but had not yet "had the opportunity to engage in meaningful discovery." *Id.* at 2. The court set a discovery deadline of May 15, 2020. *Id.* at 3, 13. And, the court set July 10, 2020 as the dispositive motion deadline. *Id.* at 8, 13. The Revised Scheduling Order made clear: "Compliance with Fed. R. Civ. P. 56 and D. Kan. Rule 56.1 is mandatory" for any summary judgment motions, and "briefs that fail to comply with these rules may be rejected, resulting in summary denial of a

---

Complaint. *See* Doc. 38 at 1, 4 (¶ 8), 7–8 (¶ 21), 13–14; Doc. 36. And, the court has explained the procedure required to amend a pleading to add claims. *See* Docs. 55, 64. Plaintiff has not sought or been granted leave to amend her First Amended Complaint to pursue claims under these laws, and the court does not consider them here.

motion or consideration of a properly supported motion as uncontested." *Id.* at 8. And, the court encouraged the parties to consider stipulating to facts and legal issues not in dispute. *Id.*

Plaintiff filed her First Amended Complaint the same day the court entered the Revised Scheduling Order—November 22, 2019. Doc. 36. Defendant answered on December 6, 2019. Doc. 37. And, that same day, plaintiff filed the Motion for Summary Judgment presently before the court. Doc. 38. Defendant filed its Memorandum in Opposition on January 9, 2020. Doc. 42.

A few months later, plaintiff moved to amend her First Amended Complaint. Doc. 58. Defendant opposed this motion. Doc. 59. And plaintiff replied. Doc. 63. The court stayed all deadlines pending the court's decision on plaintiff's request to amend. Doc. 62. On June 26, 2020, Judge Birzer issued a Report and Recommendation to this court, recommending the court deny plaintiff leave to amend because plaintiff's motion was untimely, would unduly prejudice defendant, and the new claims would be futile. Doc. 64. The court adopted the Report and Recommendation and denied plaintiff leave to amend on August 5, 2020. Doc. 67.

The court considers plaintiff's Motion for Summary Judgment (Doc. 38) below.

## II.    Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgment under Fed. R. Civ. P. 56. Construing her motion liberally, the court concludes plaintiff seeks summary judgment on each of her claims under Title VII, 42 U.S.C. § 1981, ADAAA, KAAD, and FLSA. *See* Doc. 38 at 1, 7–13 (referencing Title VII, 42 U.S.C. § 1981, ADAAA, KAAD, and FLSA). Defendant opposes summary judgment. Doc. 42. It argues plaintiff's motion is premature and does not comply with our court's procedural rules for summary judgment motions. *Id.* at 26–28, 32–33. And, defendant argues, plaintiff doesn't meet her substantive burden for summary judgment either. *Id.* at 28–31.

3

### A.  Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), a party may move for summary judgment by "identifying each claim . . . on which summary judgment is sought" and showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. 1457, 1460 (D. Kan. 1995).  When it applies this standard, the court "view[s] the evidence and make[s] inferences in the light most favorable to the non-movant."  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145, 1150 (D. Kan. 2012) (explaining that "[a]n issue of fact is 'genuine' if 'the evidence allows a reasonable jury to resolve the issue either way'" (quoting *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006))).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Nahno-Lopez*, 625 F.3d at 1283 (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  So, the moving party must "provid[e] the court with the basis for the motion and identify[] those portions of the record that

4

show the absence of a genuine issue of material fact." *Affiliated Foods Midwest Coop., Inc. v. Wolf Creek Marketplace*, No. 10-2012-JAR, 2011 WL 231420, at *1 (D. Kan. Jan. 24, 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

When the moving party does not bear the burden of persuasion at trial, the movant has the initial burden of production on summary judgment, but "'need not negate the non-movant's claim, [and] need only point to an absence of evidence to support the non-movant's claim.'" *Kannady*, 590 F.3d at 1169 (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)); *see also In re Urethane Antitrust Litig.*, 913 F. Supp. 2d at 1150. Once the movant "carries this initial burden, the nonmovant" must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Kannady*, 590 F.3d at 1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).

But, when the moving party also bears the burden of proof at trial—as plaintiff does here since she is the party asserting claims—"a more stringent summary judgment standard applies." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). The moving party "cannot force the nonmoving party to come forward with specific facts showing there [is] a genuine issue for trial merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact." *Id.* (citations and internal quotation marks omitted). "Instead, the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.* Again, if the moving party properly supports its motion, the non-moving party "'must bring forward specific facts showing a genuine issue for trial.'" *Kannady*, 590 F.3d at 1169 (quoting *Jenkins*, 81 F.3d at 990); *see also Celotex Corp.*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248–49. So, if the burden shifts to the non-moving party—defendant here—the non-movant can survive

the summary judgment motion if it "present[s] evidence from which a jury might return a verdict in [its] favor"—*i.e.*, shows "there is a genuine issue of fact that requires a trial." *Anderson*, 477 U.S. at 257.

"[T]he facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)) (explaining the parties on summary judgment should "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact" could find in the party's favor (citations and internal quotation marks omitted)). "Under Rule 56(c) summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citations and internal quotation marks omitted).

Finally, summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1). "The very purpose of a summary judgment action is to determine whether trial is necessary." *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

### B.  Pro Se Litigant's Failure to Comply with the Summary Judgment Rules

Plaintiff's motion provides a number of purported facts which, she contends, entitle her to summary judgment. *See* Doc. 38 at 1–10. Mixed in with her numbered fact statements are assertions that she is entitled to summary judgment on her discrimination and other claims. *See*

*id.* Most of her purported fact statements cite no record evidence. *See id.  But see id.* at 8 (¶ 21 citing to "EX 1.  My termination documents and pay statements that are non-negotiable by the defendant's request" to support the damages she seeks).  Following plaintiff's numbered paragraphs, she includes excerpts from certain statutes about damages, followed by a "default judgment request."[3]  *Id.* at 11–14.  Plaintiff provides detailed damages calculations and asks the court to order defendant to compensate her for its Title VII and ADAAA violations "for terminating [her] employment fully while on an approved leave of absence covered and monitored by the defendant."  *Id.* at 14–15.

Plaintiff also attaches a variety of documents to her motion.  *See* Docs. 38-1, 38-2 (attaching, among other documents, employment documents including an offer letter, the company code of conduct, earnings statements, correspondence about plaintiff's short-term disability leave, and health benefits coverage summaries and guides).  But, she never explains how these attachments support her purported undisputed material facts.  Nor does she explain why there is no genuine dispute about any material facts or why she deserves judgment as a matter of law on each of her claims.

Defendant controverts each of plaintiff's facts because she fails to refer with particularity to the portion of the summary judgment record she relies on as D. Kan. Rule 56.1(a) requires and because she fails to comply with D. Kan. Rule 56.1(d)'s requirements for presenting facts.  Doc. 42 at 2–22.  Still, defendant properly has responded to each of plaintiff's purported facts

---

[3]       The court also has construed plaintiff's motion liberally as a default judgment motion.  But, default judgment is not appropriate here.  Fed. R. Civ. P. 55(a) permits a court to enter default against a party who has failed to plead or otherwise defend.  Defendant here has appeared and defended the claims asserted against it, so defendant is not in default and a default judgment is not appropriate.  *See e.g.*, Doc. 8 (Answer to Complaint); Doc. 37 (Answer to First Amended Complaint); Doc. 42 (Opposition to plaintiff's Motion for Summary Judgment).

identifying those it agrees are undisputed for purposes of plaintiff's summary judgment motion. *See id.*

The Revised Scheduling Order warned plaintiff that she must comply with Fed. R. Civ. P. 56 and D. Kan. Rule 56.1 for any summary judgment motions and briefs, and failing to do so could result in "summary denial of a motion or consideration of a properly supported motion as uncontested." Doc. 34 at 8. The text of Rule 56(c) describes the required procedure for both the moving and nonmoving party when supporting factual positions in summary judgment briefing. Fed. R. Civ. P. 56(c)(1) requires a party who asserts "a fact cannot be . . . genuinely disputed" to support that assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Similarly, our court's local rule, D. Kan. Rule 56.1(a), requires a summary judgment brief to begin with "a concise statement of material facts" that the movant believes are not genuinely disputed. These facts "must be numbered and must refer with particularity to those portions of the record upon which movant relies." D. Kan. Rule 56.1(a). The opposing party then must controvert the movant's facts specifically or they will be deemed admitted for purposes of the summary judgment motion. *Id.*

Here, defendant controverts each of plaintiff's facts because she did not refer with particularity to the portions of the record on which she relies. Plaintiff indeed fails to comply with this requirement because none of her statements of fact refer with particularity to evidence in the record. Defendant also controverts plaintiff's facts because D. Kan. Rule 56.1(d) requires all facts to be presented by "affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions." Plaintiff fails to comply with this requirement as well. While plaintiff attached a

variety of documents to her motion, she filed her motion when the parties had just started engaging in discovery.  And, she doesn't tie those documents to her purported facts, provide any affidavits, declarations, depositions, interrogatory answers, admissions responses, or otherwise support her motion, or authenticate the documents she attaches.  *See Chen v. Dillard Store Servs., Inc.*, No. 13-2358-CM, 2016 WL 107933, at *1 (D. Kan. Jan. 8, 2016) (explaining how the federal and local rules require a party to authenticate documents to present admissible evidence on summary judgment); *Simon v. Grafton, Inc.*, Nos. 12-2796-JAR, 12-2797, 2014 WL 3661098, at *2 (D. Kan. July 23, 2014) (disregarding portions of plaintiff's summary judgment motion that did not contain any citations to the record and where plaintiff "did not provide any affidavits, depositions, declarations, nor any other support for his statement of facts" because they didn't comply with Fed. R. Civ. P. 56 or D. Kan. Rule 56.1); *Elrod v. Walker*, No. 06-3115-SAC, 2011 WL 6372881, at *1 (D. Kan. Dec. 20, 2011) (explaining a party "must come forward with admissible evidence establishing each fact he relies upon" and must present those facts "by affidavit, declaration under penalty of perjury, or other discovery" (citation and internal quotation marks omitted)); *Jones v. Mineta*, No. 02-2392-JWL, 2004 WL 1534177, at *1 (D. Kan. July 8, 2004) (describing how pro se plaintiff failed to follow the local rules in submitting her motion for summary judgment where she did not "support[ ] her motion with references to depositions, affidavits or any other competent Rule 56(e) evidence" and did not authenticate the exhibits attached to her motion as the rules require, but considering plaintiff's briefs and the exhibits attached to determine "whether genuine issues of material fact exist").

Although courts must construe the substantive pleadings of pro se parties liberally, pro se litigants still must comply with the procedural rules or suffer the consequences of noncompliance.  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (stating that "[t]his court

has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants" (citation and internal quotation marks omitted)); *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (explaining a party's pro se status "does not excuse the obligation . . . to comply with the fundamental requirements of the Federal Rules of Civil . . . Procedure").  This duty includes the court's local rules.  *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992); *see also Elrod*, 2011 WL 6372881, at *6 & n.3 (explaining plaintiff's unsupported allegations did not constitute admissible evidence and that, on summary judgment, "[a]lthough the [c]ourt affords some leeway to pro se parties, it cannot merely overlook [p]laintiff's failure to state and oppose material facts in compliance with the local rules, and [p]laintiff's failure to submit admissible evidence . . . .").

        And, the court does not assume the role of advocate for a pro se plaintiff and does not construct arguments for her.  *Hall*, 935 F.2d at 1110; *see also Handy v. City of Sheridan*, 636 F. App'x 728, 743 (10th Cir. 2016) (explaining pro se litigant had waived arguments not raised in his brief because the court need not "supply[ ] arguments for [pro se litigants] that they have failed to make"); *Robles v. Amarr Garage Doors*, No. 11-2707-JAR-DJW, 2012 WL 2359423, at *1 (D. Kan. June 20, 2012) (explaining the court will liberally construe a pro se plaintiff's motion to determine if it "can be reasonably read to state a valid claim on which he could prevail" even if plaintiff has failed "to cite proper legal authority or follow normal pleading requirements" but the court does not "assume the role of advocate" and "shall not supply additional factual allegations to round out a plaintiff's claims or construct a legal theory on his behalf"); *Douglass v. Gen. Motors Corp.*, 368 F. Supp. 2d 1220, 1227 (D. Kan. 2005) (explaining a pro se plaintiff is not excused "from the burden of coming forward with evidence to support her claims as required by the Federal Rules of Civil Procedure and the local rules of

this court" on summary judgment); *Ellibee v. Posey*, No. 02-3233-JAR, 2005 WL 664043, at *1

(D. Kan. Jan. 11, 2005) (liberally construing pro se litigant's motion for summary judgment, but

explaining "'the court will not construct arguments or theories for the plaintiff in the absence of

any discussion of those issues'" and that pro se plaintiffs must comply with the fundamental

rules of procedure (quoting *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.

1991))).

   Indeed, on summary judgment, the court has no duty to search the record on a litigant's

behalf to find evidence supporting her summary judgment interests.  *See Cross v. Home Depot*,

390 F.3d 1283, 1290 (10th Cir. 2004) (explaining that, on a motion for summary judgment, "'it

is the responding party's burden to ensure that the factual dispute is portrayed with particularity,

without . . . depending on the trial court to conduct its own search of the record'" and the district

court has no obligation "'to comb the record in order to make [the party's] arguments for him'"

(first quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir. 1978); then quoting *Mitchell v. City

of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000)).  This same standard applies to cases involving

pro se litigants.  *See Handy*, 636 F. App'x at 743 n.15 (affirming summary judgment against a

pro se plaintiff, concluding that the district court had no duty to review the record independently

for evidence that might negate summary judgment, and concluding the district court did not err

by failing to consider evidence that the pro se plaintiff attached to his complaint but did not cite

in his opposition to summary judgment (citing *Cross*, 390 F.3d at 1290)); *McKinzy v. I.R.S.*, 367

F. App'x 896, 897 (10th Cir. 2010) (affirming summary judgment against a pro se plaintiff who

alleged generally that disputed issues of material fact precluded summary judgment but failed to

identify any part of the record to support his claim because "'[j]udges are not like pigs, hunting

for truffles buried in briefs'" (quoting *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th

Cir. 1995))).  So, the court is not required to search the materials attached to plaintiff's motion to determine if summary judgment in her favor is appropriate.

Here, plaintiff fails to comply with the federal and local rules governing summary judgement motions and does not identify with particularity any part of the record to support each element of her claims against defendant.  And, for this reason, the court denies her summary judgment motion.  *See Wolters v. Conner*, No. 03-3251-KHV, 2004 WL 723585, at *5 (D. Kan. Apr. 1, 2004) (overruling pro se plaintiff's motion for summary judgment for failing to comply with D. Kan. Rule 56.1 by not citing evidence to support his claim); *MacCormack v. City of Prairie Village, Kan.*, No. 00-2405-CM, 2001 WL 58838, at *4 (D. Kan. Jan. 17, 2001) (denying pro se plaintiff's motion for summary judgment because he failed "to provide the court with any factual basis—other than the bald assertions in his motions and memoranda—upon which to determine whether there is any genuine issue of material fact" and failed to "cite to any pleading, deposition, answer to interrogatories, admission, or affidavit which supports his view of the facts"); *see also* Fed. R. Civ. P. 56(e) (explaining if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" the court may give the party "an opportunity to support or address the fact," "consider the fact undisputed for purposes of the motion," "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show the movant is entitled to it," or "issue any other appropriate order"); *cf. Wilson v. Skiles*, No. 02-3190-JAR, 2005 WL 466207, at *2 (D. Kan. Feb. 4, 2005) (granting motion to strike plaintiff's summary judgment motion because "[e]ven construing plaintiff's motion liberally, the [c]ourt [was] unable to find any reference to specific portions of the record that support his motion" and because striking the motion "does not preclude plaintiff from prosecuting this lawsuit on the merits, as he is the moving party"); *Ellibee*, 2005 WL

664043, at *1 (granting defendant's motion to strike pro se litigant's motion for summary

judgment because the court could not "find any reference to specific portions of the record that

support his motion," and plaintiff "provide[d] no discussion of which facts are uncontroverted").

While the court denies plaintiff summary judgment, this ruling doesn't preclude her from

renewing her motion later or otherwise litigating her claims on the merits.  *See Wilson*, 2005 WL

466207, at *2; *Ellibee*, 2005 WL 664043, at *1.

As explained below, the court also denies plaintiff's summary judgment motion on the

merits because plaintiff hasn't demonstrated "no genuine dispute as to any material fact" or that

she is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see MacCormack*, 2001

WL 58838, at *4 (explaining even if court accepted plaintiff's unsupported "'fact[s]'" as true,

"summary judgment would not be proper because the plaintiff has shown no legal basis to justify

summary judgment").  As D. Kan. Rule 56.1(b) requires, defendant has responded to plaintiff's

facts indicating those facts it does not dispute at summary judgment and where it believes a

genuine dispute exists.  And, defendant has provided additional summary judgment facts,

supported by references to the record.  Because plaintiff never submitted a reply properly

objecting to any of defendant's additional facts, the court considers them undisputed for the

purpose of summary judgment and accepts them as true when properly supported by the

summary judgment evidence.  *See* D. Kan. Rule 56.1(b); *Reed v. Bennett*, 312 F.3d 1190, 1195

(10th Cir. 2002).

### C.  Undisputed Facts

To determine the summary judgment facts, the court considers plaintiff's motion and

other materials submitted to the court even though they fail to comply with the federal and local

rules governing summary judgment.  The court has attempted to give them fair construction

under the liberal pro se standard when analyzing plaintiff's summary judgment motion.  Taken

together with the materials submitted by defendant, the court has determined the facts below to

be either uncontroverted for purposes of plaintiff's motion, or, where genuinely controverted,

views the facts in the light most favorable to defendant, the party opposing summary judgment.

*Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need

consider only the cited materials, but it may consider other materials in the record.").

Plaintiff is an African American woman.  Doc. 42 at 2 (¶ 1).  Plaintiff was hired by

defendant as a full-time employee at its Wichita, Kansas call center beginning in August 2017.

Doc. 38-1 at 6–7; Doc. 42 at 3–4 (¶ 3).  She was hired as an at-will employee.  Doc. 38-1 at 11;

Doc. 42 at 5–6 (¶ 6).  An Employee Acknowledgement; a Restrictive Covenant, Intellectual

Property Ownership and Assignment, and Confidentiality Agreement; and a Wage and Hourly

Essential Information for Hourly Employees provided certain terms of her employment with

defendant.[4]  Doc. 38-1 at 11–19.  And, plaintiff completed new hire training when she started

with defendant.  Doc. 42 at 4–5 (¶ 5).  Defendant's Code of Conduct provides it is an equal

---

[4]     Liberally construing plaintiff's motion, she argues that only defendant's Chairman, President, or
CEO could terminate her at-will employment because the Employee Acknowledgment provided by
defendant established that:

> No one except the Chairperson, President and Chief Executive Officer of T-Mobile has the
> authority to change the at will status of my employment, to make any agreement that I will
> be employed by the Company for any set period of time, or to make any other promises or
> commitments that are contrary to the policy of at will employment.  For any such
> agreement, promise or commitment to be binding on the Company, and to be valid and
> enforceable against it, that agreement promise or commitment must be part of a written
> contract signed by me and the Chairperson, President, or Chief Executive Officer of
> T-Mobile and, if applicable, have the approval of the Compensation Committee.

Doc. 38-1 at 11; *see also* Doc. 38 at 7 (¶ 20).  But this provision applies when a person's employment
changes from at-will to an employment status that cannot be terminated at will.  The same Employee
Acknowledgement provides that the Company may terminate employment "at any time, with or without
reason, cause or notice."  Doc. 38-1 at 11.  Also, plaintiff doesn't explain how this provision in the
Employee Acknowledgment entitles her to summary judgment on her discrimination or FLSA claims.

opportunity employer, who prohibits discrimination based on age, race, sex, and other protected statuses.  Doc. 38-1 at 94; Doc. 42 at 12–13 (¶ 16).

Defendant provides maternity leave as an employee benefit to eligible employees.  Doc. 42 at 8–9 (¶ 11).  In April 2018, plaintiff began an approved leave of absence for maternity leave, which was scheduled to last through July 18, 2018.  Doc. 42 at 8 (¶ 10), 23 (¶¶ 2–3); *see also* Doc. 38-1 at 10 (July 21, 2018 text message provided by plaintiff discussing how her six weeks of leave had ended); Doc. 38-1 at 25 (short-term disability benefits materials provided by plaintiff); Doc. 38-1 at 83 (emails provided by plaintiff containing terms of her leave).  Plaintiff didn't return to work on July 19, 2018.  Doc. 42 at 23 (¶ 4).  Defendant tried to contact plaintiff, but she didn't answer the phone and her voicemail box was full.  *Id.* (¶ 5).  On July 22, 2018, plaintiff informed defendant she was seeking to extend her leave and would return to work on July 28, 2018.[5]  *Id.* (¶ 6).  But she didn't return to work on July 28 either or contact defendant about her absence.  *Id*. (¶ 7).

Defendant contacted its third-party leave benefits administrator, Broadspire, to see if plaintiff had applied for a leave extension.  *Id.* at 24 (¶ 8).  Broadspire informed defendant she had not done so.  *Id.*  After plaintiff didn't return to work, defendant terminated her employment on July 29, 2018, citing job abandonment.  *Id.* (¶ 9).

---

[5]    Plaintiff's statement of facts provides that she attempted to return to work on July 22, 2018, but was told she needed certain paperwork before she could return.  Doc. 38 at 5 (¶ 12).  But she provides no evidentiary support for this assertion.

The court views the facts in the light most favorable to defendant as the non-moving party.  *Nahno-Lopez*, 625 F.3d at 1283.  Given this standard and because defendant has provided the requisite evidentiary support, the court accepts, for purposes of plaintiff's summary judgment motion, defendant's version of events, *i.e.*, that plaintiff came into the call center on July 22 and stated she was extending her leave and would return July 28.  *See* Doc. 42-1 at 3 (¶ 8); Doc. 42-1 at 13.

On July 30, 2018, plaintiff again informed defendant she had contacted Broadspire about extending her leave. Doc. 42 at 24 (¶ 10). And, she explained, Broadspire provided her until August 1, 2018 to acquire the health care paperwork for her request. *Id.* When defendant again reached out to Broadspire to see if plaintiff had applied for an extension, it learned that Broadspire had received a request from plaintiff for extension paperwork. *Id.* (¶ 11). So, defendant reinstated plaintiff's employment and explained to plaintiff that it had terminated her employment as a result of administrative error because of the miscommunication with Broadspire. *Id.* (¶ 12). Defendant reinstated all of plaintiff's benefits and worked to ensure there were no documented gaps in her employment or benefits. *Id.*; *see also* Doc. 42 at 11 (¶ 14) (admitting defendant initially terminated plaintiff for job abandonment but notified plaintiff on August 3 that she had been reinstated after it learned she had requested a leave extension).

Plaintiff's leave was extended through August 7, 2018. Doc. 42 at 25 (¶ 13); Doc. 42-1 at 13 (email report noting that, on August 2, plaintiff was approved for a leave of absence from July 19 through August 6 and that plaintiff was informed about this approved leave extension on August 3); Doc. 38-1 at 25 (short-term disability benefits materials provided by plaintiff). On August 9, 2018, plaintiff sought another extension. Doc. 42 at 25 (¶ 14). But she was unable to secure the necessary paperwork from her health care provider possibly because of an issue with her health insurance coverage showing up as inactive. *Id.* (¶ 15); Doc. 42-1 at 13; *see also* Doc. 38-2 at 24 (email included with plaintiff's motion indicating she was unable to see her doctor because of insurance coverage timing issues). So, defendant gave plaintiff until August 27, 2018, to secure the paperwork. Doc. 42 at 25 (¶ 14); Doc. 42-1 at 13; *see also* Doc. 38-1 at 26 (emails attached to plaintiff's motion). On August 27, 2018, plaintiff informed defendant she was unable to see her health care provider because she had an outstanding bill. Doc. 42 at 25

(¶ 15); Doc. 42-1 at 13.  Defendant allowed plaintiff until October 8, 2018 to schedule another appointment with her health care provider to secure the paperwork she needed to extend her leave.  *Id.*

By October 15, 2018, defendant had not received any more information from plaintiff about her request for extended leave and plaintiff still had not returned to work.  *Id.* (¶ 16).   And so, defendant again terminated plaintiff's employment for job abandonment.  *Id.*

### D.  Substantive Summary Judgment Analysis

Plaintiff seeks summary judgment on her claims against defendant.  But, she does not specify the grounds which she believes make summary judgment appropriate.  Liberally construing plaintiff's motion, she argues she is entitled to summary judgment on her Title VII, 42 U.S.C. § 1981, ADAAA, FLSA, and KAAD claims against defendant because it terminated her employment on July 29, 2018.  *See* Doc. 38 at 6–9 (¶¶ 18, 21–23, 25–27).  She contends defendant discriminated against her based on her sex and a disability when it terminated her employment and associated employee benefits because she was seeking an extension of her short-term disability maternity leave at the time and she believed her leave had not yet expired.[6] *Id.*  Plaintiff asserts the loss of her job and benefits "cause[d] damages to [her] livelihood and financial statu[]s" and she "completely lost all accrued, given, invested, and possibilities of gaining enjoyment of [her] benefits."  *Id.* at 6–7 (¶ 18).  And, she seeks damages to compensate her for these losses.  *Id.* at 7–8 (¶¶ 19, 21).  She contends the termination interfered with her short-term disability payments and caused other issues.  *Id.* at 8 (¶¶ 22–23, 25).

---

[6]      Plaintiff's First Amended Complaint also briefly asserts race discrimination.  *See* Doc. 36 at 1 (¶ 1).  Though plaintiff doesn't explicitly address race in her summary judgment motion, the court considers below whether she is entitled to summary judgment on a race discrimination claim.

Plaintiff argues the court should grant summary judgment in her favor because "defendant unjustly terminated [her] employment, the wrongful conduct created failure to promote [plaintiff], [and a] failure to accommodate [plaintiff's] known maternity [leave of absence] terms and disability." Doc. 38 at 9 (¶ 26). Plaintiff also asserts defendant unlawfully retaliated against her. Doc. 38 at 6 (¶ 15). Plaintiff contends defendant scheduled her to work while she was on leave and never should have terminated her employment for job abandonment. Doc. 38 at 9 (¶ 26). She believes defendant's offer to reinstate her employment was done with "malice and hostil[ity]" and was a way to "mask liability of fault." Doc. 38 at 14. Finally, she sets out in detail the monetary damages she seeks to recover and asks the court to order defendant to pay. Doc. 38 at 14–15.

Liberally construing her arguments, plaintiff seeks summary judgment that she was discriminated against based on sex and disability because she was terminated while she was seeking a leave extension of her short-term disability maternity leave. Defendant argues plaintiff hasn't carried her summary judgment burden of proof here, where she has not explained how the law applies to the facts and hasn't explained how she is entitled to judgment as a matter of law. Doc. 42 at 27. Defendant contends plaintiff hasn't alleged a disability or explained how the unidentified purported disability or any other protected status or activity motivated any of defendant's actions. *Id.* And, defendant contends that plaintiff hasn't established a prima facie case of discrimination because she hasn't provided any evidence suggesting her termination resulted from a discriminatory motive. *Id.* at 28. Plus, defendant argues, even if she had satisfied her prima facie burden, it has offered a legitimate and non-discriminatory explanation. *Id.* at 30.

As explained in more detail below, plaintiff is not entitled to summary judgment on her claims against defendant here.  The court first addresses plaintiff's FLSA claim.  Then, it turns to her discrimination claims.

### 1.  FLSA

Plaintiff's motion references her FLSA claim.  *See, e.g.*, Doc. 38 at 9 (¶ 27) (seeking summary judgment for defendant improperly reducing her wages and inaccurately reporting her payroll deductions, wages, and taxes and asserting that her alleged wrongful termination interfered with her pay and associated taxes and deductions).  Her First Amended Complaint indicates her "[t]axes, [w]ages, and deductions were discriminated against" and her "last paycheck is inaccurate."  Doc. 36 at 4.  It also alleges she wasn't given all her short-term disability payments and had certain benefits changed or charged to her that she didn't elect.  *Id.*

Under the FLSA, an employee may bring an action against her employer to recover damages for unpaid minimum wages or overtime pay.  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013); *see also* 29 U.S.C. §§ 206, 207, 216(b).  Employers also are required to make, keep, and preserve specific employment-related records, including records of their employees and their wages, hours, and other conditions and practices of employment.  *See* 29 U.S.C. § 211(c).  While plaintiff's motion mentions the FLSA and argues she is entitled to summary judgment, the court cannot discern any purported facts to support her FLSA claim or why judgment would be appropriate as a matter of law.  Plaintiff attaches to her summary judgment motion a variety of pay statements.  But, these materials and her purported facts and arguments do not demonstrate an FLSA violation without more explanation.  Plaintiff doesn't explain how her wages or defendant's reporting were inaccurate.  And, the court thus denies plaintiff's motion to the extent she seeks summary judgment on her FLSA claim.

## 2.  Discrimination Claims

The court first addresses the applicable legal standard for each of plaintiff's discrimination claims raised in her summary judgment motion.  Then, the court explains why plaintiff is not entitled to summary judgment on those claims.

### a.  Title VII Discrimination Based on Race or Sex

Title VII prohibits an employer from discriminating against an employee based on the individual's race or sex, and discrimination based on sex includes discrimination based on pregnancy.  *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190–91 (10th Cir. 2000).  "To prevail under Title VII, a plaintiff must show, through either direct or indirect evidence, that the discrimination complained of was intentional."  *Id.* at 1191.  And, "[a] plaintiff who lacks direct evidence of intentional discrimination may use the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 . . . (1973), to demonstrate intentional discrimination."[7]  *Id.*

---

[7]     The KAAD also prohibits discrimination in employment based on "race, religion, color, sex, disability, national origin or ancestry."  Kan. Stat. Ann. §§ 44-1001; 44-1009(a).  KAAD and Title VII claims are analyzed in the same manner.  *See, e.g.*, *Singh v. Cordle*, 936 F.3d 1022, 1037, 1042 (10th Cir. 2019) (applying the same burden-shifting framework to KAAD and Title VII discrimination and retaliation claims); *Duffey v. Bd. of Comm'rs of Butler Cnty., Kan.*, No. 08-1186-WEB, 2011 WL 1118585, at *9–10 (D. Kan. Mar. 25, 2011) (analyzing KAAD and Title VII gender discrimination claims together).

42 U.S.C. § 1981 prohibits race discrimination in contractual relationships, among ensuring other rights to all races.  *Kelly v. Bank Midwest, N.A.*, 177 F. Supp. 2d 1190, 1203–04 (D. Kan. 2001) (explaining to establish a prima facie case of race discrimination under § 1981, "a plaintiff must show that he is a member of a protected class; that defendant had the intent to discriminate on the basis of race; and that the discrimination interfered with a protected activity as defined in section 1981").  Section 1981 claims also are analyzed in the same manner as Title VII claims.  *Id.* at 1204–05 (employing the *McDonnell Douglas* burden-shifting framework to a § 1981 claim); *see also Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (noting the standards to prove a Title VII or § 1981 violation "are the same"); *Degan v. Reser's Fine Foods, Inc.*, No. 14-4004-DDC, 2015 WL 4425877, at *4 (D. Kan. July 17, 2015) (applying *McDonnell Douglas* burden-shifting framework to Title VII, KAAD, and § 1981 claims).

Under the familiar *McDonnell Douglas* framework, a plaintiff "bears the initial burden of establishing a prima facie case by a preponderance of the evidence." *Id.* A plaintiff proves a prima facie case of pregnancy or race discrimination by showing: (1) she is within the protected class; (2) she was doing satisfactory work; (3) she was discharged or received unfavorable treatment; and (4) her position remained open and was ultimately filled by a nonpregnant or non-African American employee or she was treated less favorably than others who were not pregnant or African American but were similar in their ability or inability to work. *Atchley v. Nordam Grp., Inc.*, 180 F.3d 1143, 1148 (10th Cir. 1999); *Wiseman v. Wal-Mart Stores, Inc.*, No. 08-1244-EFM, 2009 WL 10706901, at *2 (D. Kan. July 23, 2009); *see also Singh*, 936 F.3d at 1037 (explaining the "specific test for a prima facie case" varies depending on the context, but the key inquiry is whether plaintiff has demonstrated an adverse employment action that "occurred under circumstances which give rise to an inference of unlawful discrimination" (citation and internal quotation marks omitted)); *Duffey v. Bd. of Comm'rs of Butler Cnty., Kan.*, No. 08-1186-WEB, 2011 WL 1118585, at *10 (D. Kan. Mar. 25, 2011) (reciting three elements "[t]o establish a prima facie case of disparate treatment[:]" "(1) that she belongs to a protected class; (2) that she suffered from an adverse employment action; and (3) the adverse employment action occurred under circumstances that give rise to an inference of discrimination"). In short, plaintiff must show she was treated differently than similarly situated employees who are not members of her protected class.

If plaintiff satisfies her prima facie burden, "plaintiff raises a rebuttable presumption that the defendant unlawfully discriminated against her." *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1191. Then, "[t]he burden of production shifts to the defendant who must articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the

plaintiff." *Id.* "If the defendant is able to articulate a facially nondiscriminatory reason for the adverse employment action," the burden shifts back to plaintiff to "show that her [race or sex, including for example her] pregnancy was a determinative factor in the defendant's employment decision, or show the defendant's explanation for its action was merely pretext." *Id.* (citation and internal quotation marks omitted).  Plaintiff ultimately must prove intentional discrimination. *Id.* at 1191–92.

### b.  ADAAA Disability Discrimination

The ADAAA "prohibits employers from discriminating against employees on the basis of disability and requires employers to make 'reasonable accommodations' to 'qualified individual[s],' unless the accommodations impose an undue hardship on the employer." *E.E.O.C. v. Tricore Reference Labs.*, 849 F.3d 929, 933 (10th Cir. 2017) (quoting 42 U.S.C. §§ 12112(a), (b)(5)(A)).  A '"qualified individual' . . . is someone who, 'with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'"  *Id.* (quoting 42 U.S.C. § 12111(8)).  A disability is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1).

"To state a prima facie case of disability discrimination . . . the plaintiff must demonstrate:  (1) that she is a disabled person within the meaning of the ADA[AA]; (2) that she is qualified, that is, with or without reasonable accommodation (which she must describe), she is able to perform the essential functions of the job; and (3) that the employer terminated her because of her disability."  *Gudenkauf v. Stauffer Commc'ns, Inc.*, 922 F. Supp. 465, 472 (D. Kan. 1996) (citations, alterations, and internal quotation marks omitted).  The *McDonnell Douglas* burden shifting framework also applies to ADAAA claims where no direct evidence of

discrimination has been presented.  *Lee v. TransAm Trucking, Inc.*, No. 17-2150, 2018 WL 3432045, at *5 (D. Kan. July 16, 2018).

### c.  Title VII Retaliation

Title VII also prohibits retaliatory discrimination.  *Poff v. Okla. ex rel. Okla. Dep't of Mental Health & Substance Abuse Servs.*, 683 F. App'x 691, 701 (10th Cir. 2017).  "To establish a prima facie case of retaliation, a plaintiff must show that:  (1) he or she engaged in protected activity; (2) he or she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action."  *Id.* at 701–02 (citation, alterations, and internal quotation marks omitted); *see also Singh*, 936 F.3d at 1042 (explaining the elements required to meet a prima facie burden for a retaliation claim and how the action taken against the party must be one a "reasonable person would have found materially adverse").  Protected activities include engaging in protected opposition to a practice made an unlawful employment practice under Title VII or filing a charge of discrimination under Title VII.  *Poff*, 683 F. App'x at 702; *Singh*, 936 F.3d at 1042.  The *McDonnell Douglas* burden-shifting framework applies to retaliation claims too.  *Singh*, 936 F.3d at 1042.

### d.  Analysis

Plaintiff argues defendant terminated her employment based on her race, sex, and disability.  But, as explained below, she has not provided any direct or indirect evidence of discrimination based on race, sex, or disability to satisfy her prima facie burdens here.  *See, e.g.*, *Anderson v. Cato Corp.*, 444 F. App'x 280, 283–84 (10th Cir. 2011) (describing the difference between direct and indirect evidence of discrimination); *TriCore Reference Labs.*, 849 F.3d at 941 (describing how a plaintiff could state a prima facie claim for disparate treatment by showing that her employer accommodated non-pregnant workers differently).

23

Defendant concedes that plaintiff is a member of a protected class because she is a woman and that she suffered an adverse employment action because she was terminated.  Doc. 42 at 29.  Defendant also doesn't dispute, for purposes of summary judgment, that plaintiff was performing satisfactory work before her July 2018 termination.  *Id.*  But, defendant argues, plaintiff has not established the fourth requirement to meet her prima facie burden for sex-based discrimination because she hasn't shown she was treated differently than similarly situated employees who were not members of her protected class.  *Id.*

The court agrees.  Plaintiff has provided no evidence showing non-pregnant or non-African American employees weren't terminated if they failed to return to work when defendant believed their approved leave had expired.  Nor has she provided any evidence showing she was treated less favorably than others who were not pregnant or African American when seeking her leave extensions or engaging in other behavior similar to plaintiff's behavior here.  *See Lee*, 2018 WL 3432045, at *7–8 (explaining that plaintiff was a member of a protected class (pregnant woman), was qualified for her position, and suffered an adverse employment action (termination), but had not shown defendant had a "discriminatory intent or animus" or that "plaintiff was treated less favorably than others," so she had not proven a prima facie discrimination claim).  Plaintiff also provides no evidence to support her assertion that defendant scheduled her to work during times when it knew she was on approved leave.  Nor does she provide any evidence giving rise to an inference that defendant terminated her employment based on her sex or a disability.  Also, she doesn't offer any evidence supporting a finding that defendant only offered to reinstate her to try to hide its liability.  And, she doesn't refute the evidence defendant has provided.

Instead, the trier of fact could find from the undisputed facts that defendant terminated plaintiff's employment because she did not return to work after defendant believed her approved leave had expired. *See, e.g.*, Doc. 42 at 19 (admitting defendant initially terminated plaintiff's employment for job abandonment because it believed "that she had not reported back to work after the expiration of her leave" but explaining after defendant became aware she had filed for an extension, defendant "notified plaintiff that her employment was being reinstated"). Plaintiff doesn't provide evidence to refute defendant's evidence showing the termination was based on her failure to return to work, not based on sex or disability. And, plaintiff doesn't controvert defendant's additional facts showing it reinstated her employment with no gaps in service after it learned she had filed for an extension of her leave of absence. Nor does plaintiff explain how the termination was discriminatory in nature. Plaintiff has failed her prima facie burden here because she has presented no evidence showing, or giving rise to an inference that, defendant had discriminatory intent. *See Horizon/CMS Healthcare Corp.*, 220 F.3d at 1191.

Plaintiff also hasn't provided any evidence showing she has a disability—as that term is defined by the ADAAA—how she was qualified to perform her job with or without reasonable accommodation, or that defendant terminated her employment because of a disability. *Gudenkauf*, 922 F. Supp. at 472; *see also Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1086 (10th Cir. 2008). Pregnancy by itself is not a disability under the ADAAA. *See Wiseman*, 2009 WL 10706901, at *4 & n.28; *Gudenkauf*, 922 F. Supp. at 472–74; *see also Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 487 (6th Cir. 2013) ("[P]regnancy is not a disability under the ADA[AA] . . . ."); *Richards v. City of Topeka*, 173 F. 3d 1247, 1250 n.2 (10th Cir. 1999) ("[A] normal pregnancy without complications is not a disability under [the ADAAA]"). To constitute a disability under the ADAAA, plaintiff must show she was pregnant

*and* had a related mental or physical impairment.  *See LaCount v. S. Lewis SH OPCO, LCC*, No. 16-CV-0545-CVE-TLW, 2017 WL 1826696, at *3 (N.D. Okla. May 5, 2017); *see also Gudenkauf*, 922 F. Supp. at 472–74; 42 U.S.C. § 12102(1) (defining "disability").[8]  "Pregnancy-related conditions can qualify" as a disability if they cause "a physical or mental impairment that substantially limits one or more major life activities of [the] individual."  *Spees v. James Marine, Inc.*, 617 F.3d 380, 396–97 (6th Cir. 2010); 42 U.S.C. § 12102(1) (defining "disability").

Plaintiff's First Amended Complaint references pregnancy complications including preeclampsia, tubal ligation, and postpartum care.  *See* Doc. 36 at 3.  She also references pregnancy complications in her summary judgment motion.  Doc. 38 at 5 (¶ 13).  But, plaintiff has presented no admissible evidence of her pregnancy complications or explained how they disabled her (as the ADAAA and KAAD define those terms) for purposes of her summary judgment motion.

Plaintiff also hasn't provided any evidence that defendant retaliated against her for opposing a discriminatory practice or for filing a discrimination charge with the EEOC and KHRC.  To satisfy her prima facie burden to state a retaliation claim, plaintiff must demonstrate a causal connection between the adverse employment action (her termination) and her engagement in a protected activity.  *See Singh*, 936 F.3d at 1043.  Plaintiff's motion does not provide any evidence suggesting she engaged in protected activities or explain how defendant retaliated against her for those activities.  Plaintiff's original Complaint attached her EEOC charge, signed August 8, 2018, and a KHRC charge signed August 8, 2018 and filed August 20,

---

[8]     The KAAD defines disability in a similar manner.  *See* Kan. Stat. Ann. § 44-1002(j) (defining "disability").

2018.  Doc. 1-2 at 5–6.[9]  Plaintiff's July 2018 termination occurred before she filed these charges.  So, even if she had presented evidence of a protected activity, she cannot demonstrate a causal connection between her initial termination and the filing of her charges.  Nor has she provided any evidence of a causal connection between her filing of charges and her October 2018 termination.

And, even if plaintiff had established a prima facie case of discrimination under Title VII, 42 U.S.C. § 1981, ADAAA, or KAAD here, she has not shown defendant's explanation for her termination was merely pretext for discrimination.  Defendant has presented evidence showing a legitimate, nondiscriminatory reason for her termination:  she failed to show up to work when defendant believed her approved leave had expired.  So, the burden shifts back to plaintiff to establish that her race, sex, or disability was a determinative factor in the decision to terminate her employment or that defendant's explanation for the termination was merely pretext. *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1191; *see also Anderson*, 444 F. App'x at 282, 284 & n.2 (assuming the plaintiff could establish a prima facie case of discrimination and describing how a plaintiff can establish an action was a pretext for unlawful discrimination); *McBride v. Medicalodges, Inc.*, Nos. 06-2535-JWL, 06-2536-JWL, 06-2538-JWL, 2008 WL 2699905, at *4 (D. Kan. July 3, 2008) (explaining that if plaintiff shows a prima facie case of race discrimination concerning her termination from employment, defendant's burden on summary judgment to establish a "legitimate, non-discriminatory reason" for the termination is "exceedingly light," and, if met, plaintiff must show the proffered reason is pretextual to survive

---

[9]     Plaintiff checked the boxes indicating she was discriminated against based on sex and disability. Doc. 1-2 at 5–6.  She didn't check the box or otherwise assert retaliation on either charge.  *Id.*  She received a No Probable Cause determination and notice of her right to sue from the EEOC August 10, 2018.  *Id.* at 1, 8.  And she received a No Probable Cause determination from the KHRC on August 24, 2018.  *Id.* at 7.

summary judgment (citations and internal quotation marks omitted)); *Lee*, 2018 WL 3432045, at

*8–9 (concluding defendant had provided a legitimate, non-discriminatory reason for firing

plaintiff—"insubordinate and unprofessional behavior"—and plaintiff had not demonstrated this

reason was pretextual).

In sum, plaintiff has not satisfied her prima facie burden for any of her discrimination

claims against defendant because she has not presented admissible evidence demonstrating as a

matter of law that defendant terminated her employment under circumstances that "give rise to

an inference of unlawful discrimination."  *Singh*, 936 F.3d at 1037 (citation and internal

quotation marks omitted).  And, even if she had, she has not overcome her burden under the

*McDonnell Douglas* framework to show as a matter of law that defendant's legitimate,

nondiscriminatory reason for the adverse employment action was merely pretext for race, gender,

or disability discrimination.  *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1191.  So, the court

denies plaintiff's summary judgment motion on its merits.

## III.    Conclusion

For all these reasons, the court denies plaintiff's Motion for Summary Judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Shanna J. Shaw's

Motion for Summary Judgment (Doc. 38) is denied.

**IT IS SO ORDERED.**

**Dated this 2nd day of September, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**