**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **SHANNA J. SHAW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.  2:18-cv-02513-CM-GEB** |
| | ) | |
| **T-MOBILE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Shanna J. Shaw was inadvertently terminated by defendant T-Mobile USA, Inc. ("T-Mobile") after an apparent miscommunication with a third-party benefits administrator led the company to conclude she failed to timely return from a leave of absence.  Immediately after being informed of the error, T-Mobile reinstated plaintiff's employment and offered her additional time to return to work or obtain proper authorization to extend her time off.  After plaintiff effectively ignored T-Mobile's requests, her employment ended.

Plaintiff has now sued T-Mobile, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Americans with Disabilities Act, the Kansas Act Against Discrimination, and the Fair Labor Standards Act, but her claims are without merit.  Plaintiff cannot establish a viable cause of action that T-Mobile's actions had any discriminatory motive whatsoever, nor can she demonstrate that she was not properly compensated for all hours she worked during her employment.  Accordingly, her claims are ripe for summary judgment and should be dismissed.

**I.    STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1(a), T-Mobile provides the following statement of uncontroverted material facts:

1.      Plaintiff, an African-American woman, was hired by T-Mobile on August 7, 2017.  Pre-Trial Order Stipulated Fact No. 1 and Supplemental Declaration of Ryan Davis ("Davis Declaration II"), attached to T-Mobile's Motion for Summary Judgment as Exhibit A, at ¶ 3; *see also* T-Mobile 000001, attached to Davis Declaration II as Exhibit 1.

2.      On April 16, 2018, plaintiff began an approved leave of absence from T-Mobile. Davis Declaration II at ¶ 4; *see also* T-Mobile 000262, attached to Davis Declaration II as Exhibit 2.

3.      Plaintiff's leave of absence was initially approved through July 18, 2018.  Davis Declaration II at ¶ 5; *see also* T-Mobile 000130, attached to Davis Declaration II as Exhibit 3. Plaintiff was therefore originally scheduled to return to work on July 19, 2018.   Davis Declaration II at ¶ 5; *see also* T-Mobile 000134, attached to Davis Declaration II as Exhibit 4.

4.      Plaintiff did not report to work following the scheduled expiration of her leave of absence.  Davis Declaration II at ¶ 6; *see also* T-Mobile 000134, attached to Davis Declaration II as Exhibit 4.

5.      T-Mobile attempted to contact plaintiff, but she did not answer the cell phone number she had provided T-Mobile and her voice mailbox was full, preventing T-Mobile from leaving a message.  Davis Declaration II at ¶ 7; *see also* T-Mobile 000134, attached to Davis Declaration II as Exhibit 4.

6.      On July 22, 2018, plaintiff informed T-Mobile she was seeking an extension of her leave of absence and would be returning to work on July 28, 2018.  Davis Declaration II at ¶ 8; *see also* T-Mobile 000134, attached to Davis Declaration II as Exhibit 4.

2

7.      Plaintiff did not report to work on July 28, 2018 and did not contact T-Mobile regarding her absence.  Davis Declaration II at ¶ 9; *see also* T-Mobile 000134, attached to Davis Declaration II as Exhibit 4.

8.      T-Mobile's leave of absence team contacted Broadspire Services Inc. ("Broadspire"), T-Mobile's third-party leave benefits administrator, and asked whether plaintiff had applied for an extension of her leave, but was informed she had not done so.  Davis Declaration II at ¶ 10.

9.      On July 29, 2018, ten days after plaintiff had not returned to work as expected, T-Mobile informed plaintiff that her employment was being terminated due to apparent job abandonment.  Davis Declaration II at ¶ 11; *see also* T-Mobile 000134, attached to Davis Declaration II as Exhibit 4.

10.      On July 30, 2018, plaintiff contacted T-Mobile and stated she had contacted Broadspire regarding an extension of her leave.  Davis Declaration II at ¶ 12; *see also* T-Mobile 000134, attached to Davis Declaration II as Exhibit 4.  Plaintiff stated that Broadspire informed her that she had until August 1, 2018, to obtain from her health care provider the paperwork necessary to consider plaintiff's request for extended leave.  *Id.*

11.      T-Mobile contacted Broadspire and confirmed that, contrary to information Broadspire had previously provided, plaintiff had in fact requested the paperwork necessary to consider her request to extend her leave of absence.  Davis Declaration II at ¶ 13; *see also* T-Mobile 000134, attached to Davis Declaration II as Exhibit 4.

12.      Accordingly, T-Mobile promptly contacted plaintiff to inform her that the termination was the result of an administrative error stemming from the miscommunication with Broadspire, and plaintiff's employment would be reinstated effective immediately.  Davis

3

Declaration II at ¶ 14; *see also* T-Mobile 000134, attached to Davis Declaration II as Exhibit 4. T-Mobile also reinstated all of plaintiff's benefits and took measures to ensure she had no documented "gaps" for purposes of her employment or benefits.  *Id.*

13.     On August 6, 2018, plaintiff's leave of absence was extended through August 7, 2018.  Davis Declaration II at ¶ 15; *see also* T-Mobile 000134, attached to Davis Declaration as Exhibit 4, and T-Mobile 000262, attached to Davis Declaration II as Exhibit 2.

14.     On August 9, 2018, plaintiff sought an additional extension of her leave of absence, but was unable to obtain the necessary paperwork from her health care provider to certify the extension, reportedly because of an issue with her health insurance coverage.  Davis Declaration II at ¶ 16; *see also* T-Mobile 000790, attached to Davis Declaration II as Exhibit 5. T-Mobile agreed to allow plaintiff until an August 27, 2018 scheduled appointment with the provider to obtain the necessary paperwork.  *Id.*

15.     On August 27, 2018, plaintiff stated the provider would not see her because she had failed to pay an outstanding bill.  Davis Declaration II at ¶ 17; *see also* T-Mobile 000790, attached to Davis Declaration II as Exhibit 5.  T-Mobile therefore agreed to allow plaintiff until an October 8, 2018 scheduled appointment with the provider to obtain the necessary paperwork. Davis Declaration II at ¶ 17; *see also* T-Mobile 000725-731, attached to Davis Declaration II as Exhibit 6.

16.     By October 15, 2018, more than two months after plaintiff's extended leave had expired, T-Mobile had not received from plaintiff information regarding a request for an additional extension to her leave, nor had plaintiff returned to work or provided any information regarding her intention of doing so.  T-Mobile therefore terminated Plaintiff's employment due

to job abandonment.  Davis Declaration II at ¶ 18; *see also* T-Mobile 000807, attached to Davis Declaration II as Exhibit 7.

17.     T-Mobile requires non-exempt employees such as plaintiff to report and record any and all hours worked, and maintains records regarding the number of hours worked and compensation paid for such hours.  Davis Declaration II at ¶ 19, *see also* T-Mobile 000082-000089, attached to Davis Declaration II as Exhibit 8 and T-Mobile 000031-000079, attached to Davis Declaration as Exhibit 9.

18.     T-Mobile's records reflect that plaintiff was properly compensated for all hours worked during her employment, and T-Mobile is not aware of any regular or overtime hours reported by plaintiff for which she was not fully and properly compensated.  Davis Declaration II at ¶¶ 20-21; *see also* T-Mobile 0000031-000079, attached to Davis Declaration II as Exhibit 9.

## II.     ARGUMENT AND AUTHORITIES

### A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate if the moving party demonstrates there is no genuine issue as to any material fact and is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Id.*  The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Spaulding at* 904.  The movant must attempt to meet his burden by

5

pointing "to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.) *cert. denied,* 506 U.S. 1013 (1992).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial. *Douglass*, 368 F. Supp. 2d at 1228. The nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. *Id.* To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *Id.*

**B. T-Mobile is entitled to summary judgment on plaintiff's claims of race and sex discrimination because she cannot meet her burden under the McDonnell-Douglas burden shifting standard.**

Plaintiff contends that her separation from employment was because of her race and sex, but she cannot establish even a prima facie case of discrimination or otherwise carry her burdens of production and persuasion under the state and federal statutes under which she is attempting to sue. Simply put, plaintiff cannot offer anything to suggest or infer that her termination was the result of an unlawful discriminatory motive, as opposed to an inadvertent error followed by her refusal to accept T-Mobile's offer that she return to work.[1]

Plaintiff's discrimination claims should be analyzed under the framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] To prevail under the *McDonnell Douglas* approach, plaintiff must first establish a *prima facie case*

---

[1] In earlier filings, plaintiff alluded to a potential cause of action for retaliation for alleged protected activity. In the Pre-Trial Order, however, plaintiff makes no mention of retaliation, and T-Mobile presumes she is not attempting to pursue such a claim.

[2] The McDonnell Douglas burden shifting framework also applies to plaintiff's claims under the KAAD. *See Land v. Midwest Office Tech., Inc.*, 114 F. Supp. 2d 1121, 1139-42 (D. Kan. 2000).

of unlawful discrimination.  *McDonnell Douglas Corp.*, 411 U.S. at 802, *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).  Put another way, plaintiff has the "initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion."  *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977); *accord Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  To meet her *prima facie* burden, plaintiff must show that she 1) is a member of a protected class; 2) met the employer's legitimate expectations; 3) suffered an adverse employment action; and 4) was treated differently than similarly situated employees who were not members of her protected class.  *McDonnell Douglas*, 411 U.S. at 802.  Once plaintiff has met this burden, the burden shifts to T-Mobile to articulate a legitimate, nondiscriminatory reason for plaintiff's separation from employment.  *Id.*  If T-Mobile sets forth such a reason, the burden shifts back to plaintiff to present evidence that T-Mobile's proffered reason for terminating her was merely a pretext for discrimination.  *Id.*

Here, plaintiff has failed to meet her initial burden of establishing a prima facie case of discrimination.  T-Mobile concedes that plaintiff is a member of a protected class because she is female and that she suffered an adverse employment action, albeit the primary act of which she complains was an administrative error caused by a miscommunication between T-Mobile and its third-party benefits administrator.  T-Mobile Fact ¶¶ 9-12.  In addition, for purposes of this motion, T-Mobile does not affirmatively dispute that she met T-Mobile's expectations prior to her July 2018 termination.[3]  However, plaintiff has offered nothing to suggest she was treated

---

[3] To the extent plaintiff is alleging her termination in October 2018 following her reinstatement was discriminatory, a point that she does not appear to raise in the Pre-Trial Order, plaintiff was not meeting T-Mobile's expectations at that time, as she had failed to request an extension of her expired leave or return to active employment.  T-Mobile Fact ¶ 16.

differently than similarly situated employees who were not members of her purported protected class.

In order to establish even a prima facie case, plaintiff must present evidence of similarly situated male or non-African-American employees who engaged in similar behavior but were not terminated. *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998). *See also Duffey v. Bd. of Comm'rs of Butler Cty., Kan.*, No. 08-1186-WEB, 2011 WL 1118585, at *10 (D. Kan. Mar. 25, 2011) (discriminatory intent may be satisfied by proof that the employer treated similarly situated employees more favorably). However, plaintiff has no such evidence, and therefore cannot proceed further on her claim that her inadvertent termination in July 2018 – or even her subsequent separation from employment in October 2018 – was the result of discriminatory animus.

Even if she somehow could be deemed to satisfy her prima facie burden, T-Mobile has offered legitimate and non-discriminatory detailed explanations as to the circumstances regarding both her initial separation from employment in July 2018, her reinstatement, and her subsequent termination in October 2018. T-Mobile Fact ¶¶ 3-9, 16. Plaintiff has not and cannot offer anything to suggest this information is a pretext for unlawful discrimination. Rather, plaintiff's July 2018 discharge was, at worst, a mistake based largely on a miscommunication with a third-party provider, and she was promptly reinstated. T-Mobile Fact ¶¶ 3-12. Any such mistake does not amount to unlawful discrimination. *See, e.g., Burks v. Mobile County Public School System*, 2019 WL 1452511 at * 4 (S.D. Ala. April 2, 2019) ("mistaken" termination that "appears to have been an error that was corrected" does not constitute intentional discrimination in violation of federal statute).

Plaintiff cannot dispute that after the error was brought to its attention, T-Mobile promptly rescinded her termination and reinstated her employment, actions that belie any suggestion that T-Mobile had any discriminatory animus toward her.  As for her subsequent October 2018 termination, it is undisputed that it was based on her failure to apply for an extension or return to active employment after the verified expiration of her leave.  T-Mobile Fact ¶ 16.  Nothing in the record reflects any indicia of discriminatory intent on the part of T-Mobile based on her race, gender, or any other protected characteristic, or casts doubt on T-Mobile's legitimate and non-discriminatory explanation for its actions.  Accordingly, plaintiff's race and gender claims are subject to summary judgment.

### C.   T-Mobile is entitled to summary judgment on plaintiff's claim of disability discrimination because she cannot meet her burden under the McDonnell-Douglas burden shifting standard.

Plaintiff also brings a claim for disability discrimination, but again she cannot present any genuine disputed facts that might allow her to carry her case to a jury.  To establish a *prima facie* case under the ADA, plaintiff must show that she (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability.  *Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1086 (10th Cir. 2008).

With regard to the first element of the prima facie case, it appears plaintiff is suggesting that her pregnancy and complications related to it rendered her disabled under the applicable law. Pregnancy itself is generally not recognized as a disability under the ADA. *See* 29 C.F.R. § 1630.2(h); *see Richards v. City of Topeka*, 173 F.3d 1247, 1250 n. 2 (10th Cir. 1999) ("numerous district courts have concluded that a normal pregnancy without complications is not a disability

9

under 42 U.S.C. § 12102(2)(A)").  Impairments related to pregnancy, however, can qualify as disabilities depending on the impact the condition has on the employee.  *See* 29 C.F.R. § 1630.2(j).  Although plaintiff references the existence of such complications in her pleadings and the Pre-Trial Order, she has never explained how they rendered her disabled under the applicable statutes, and therefore cannot establish the first element of her prima facie case.

Despite plaintiff's extensive leave of absence, T-Mobile will not, at this stage, challenge the second element as to whether plaintiff was qualified, with or without reasonable accommodation, to perform the essential functions of her job at the time of her July 2018 inadvertent termination or her October 2018 termination following her refusal to return to work or properly request additional time off.  Her prima facie case, however, is again lacking as to the third element, as she cannot point to anything that might suggest she was subject to discrimination because of any pregnancy-related impairments, rather than an individual impacted by a mere miscommunication between T-Mobile and its benefits administrator.  Standing alone, her inability to establish two elements of her prima facie case is fatal to her claim and supports the entry of summary judgment.

Even if she could establish a prima facie case of disability discrimination, plaintiff's cause of action is still ripe for summary judgment pursuant to the *McDonnell Douglas* burden shifting standards that were also applicable to her race and gender claims.  *Lee v. TransAm Trucking, Inc.*, No. 17-2150, 2018 WL 3432045, at *5 (D. Kan. July 16, 2018).  As set forth above, T-Mobile has provided properly supported details regarding its legitimate bases for any decisions it made regarding plaintiff's employment, and nothing in plaintiff's briefing supports the suggestion that these explanations are a pretext for unlawful disability discrimination.  To the contrary, T-Mobile's treatment of plaintiff supports the conclusion it provided accommodations

10

that were more than reasonable, allowing her a leave of absence stretching nearly six months despite the fact that she had been employed by T-Mobile for less than a year. *See* T-Mobile Fact ¶¶ 2-3, 10-13. These undisputed facts cut directly against the suggestion T-Mobile discriminated against plaintiff due to any impairments she might have had. Accordingly, for any or all of these reasons, any claim of a violation of the ADA is also subject to summary judgment.

### D. Plaintiff's claim for violation of the FLSA is also subject to summary judgment.

Plaintiff also asserts that T-Mobile is liable for a violation of the FLSA, claiming that she was not paid for all of the time she worked as required by the applicable law. *See* Pre-Trial Order at 10, Section 4(a)(2). "An employee who brings suit under [the FLSA] for unpaid minimum wages or unpaid overtime compensation . . . has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946). "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687.

At the outset, it does not appear plaintiff is actually claiming that she was not properly compensated for all hours worked during her active employment with T-Mobile. Rather, in the Pre-Trial Order she asserts that she believes T-Mobile violated the FLSA by allegedly "interfer[ing] with [her] disability payments." Pre-Trial Order at 3, Section 3(a). Claims related to disability benefits, however, are not covered under the FLSA, but rather are governed by the Employee Retirement Income Security Act ("ERISA"). *See generally Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004).

11

It is therefore difficult to comprehend how plaintiff has carried even her preliminary burden of demonstrating she performed work for which she was not properly compensated. Even if she had made such a showing, her claim still would not survive summary judgment, as after the plaintiff satisfies her initial burden, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687-88.  Here, T-Mobile has done just that, providing verified records demonstrating that plaintiff was in fact properly paid for all hours she worked and reported.  *See* T-Mobile Fact ¶¶ 17-18.  As a result, plaintiff's FLSA claim is ripe for summary judgment.

## III.    CONCLUSION

Plaintiff Shanna J. Shaw was understandably frustrated when a third-party benefits administrator provided inaccurate information regarding her leave of absence that prompted T-Mobile to terminate her employment.  Plaintiff, however, cannot support the contention that T-Mobile's actions were discriminatory on the basis of any protected status as opposed to an accidental miscommunication.  Nor has plaintiff ever explained why she did not respond to and accept T-Mobile's immediate rescission of her termination and offer to return to active employment, an action that in and of itself belies the suggestion that T-Mobile was acting with any degree of discriminatory intent.  Finally, plaintiff has not offered a scintilla of evidence to establish she was not fully and properly compensated by T-Mobile for any work she performed.

Accordingly, for all of reasons set forth above, defendant T-Mobile USA, Inc. respectfully requests this Court grant T-Mobile's Motion for Summary Judgment, dismiss plaintiff's claims with prejudice, and provide whatever other and further relief the Court deems appropriate.

7058794v.1

Respectfully submitted,

*/s/ David C. Vogel*
David C. Vogel, KS Bar No. 18129
Lisa L. Martin, KS Bar No. 27579
Constangy, Brooks, Smith & Prophete, LLP
2600 Grand Boulevard,  Suite 750
Kansas City, Missouri 64108-4600
Telephone: (816) 472-6400
Facsimile: (816) 472-6401
dvogel@constangy.com
lmartin@constangy.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed through the Court's e-filing system

on this 20th day of November, 2020, and a copy was forwarded by first-class U.S. Mail, postage

prepaid, to:

Shanna J. Shaw
5400 E. 21st, Apt. 719
Wichita, KS 67208


*Plaintiff Pro Se*

*/s/ David C. Vogel*
An Attorney For Defendant

13

7058794v.1