# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| SHANNA J. SHAW,<br><br>           **Plaintiff,**<br><br>v.<br><br>**T-MOBILE USA, INC.,**<br><br>           **Defendant.** | **Case No. 18-2513-DDC** |

## MEMORANDUM AND ORDER

Currently before the court are a pair of pending motions from defendant T-Mobile USA. In November 2020, T-Mobile filed a Motion for Summary Judgment (Doc. 78), which it bolstered with a Memorandum in Support (Doc. 79). Plaintiff filed a Response (Doc. 81). And T-Mobile replied (Doc. 83). This matter is fully briefed, and the court will rule it.

But, there's more. After T-Mobile replied to plaintiff's Response, plaintiff filed two additional briefs (Docs. 85, 86). According to T-Mobile's second pending motion—a Motion to Strike Plaintiff's Surreplies to Motion for Summary Judgment (Doc. 87)—plaintiff's additional filings violate the governing rules of procedure. Seasons have changed since plaintiff's deadline for responding to the Motion to Strike expired, so that motion is unopposed.[1] The court thus rules it with this Order, too.

As the following analysis explains, defendant's Motion to Strike Plaintiff's Surreplies to Motion for Summary Judgment (Doc. 87) is granted. The court also grants T-Mobile's Motion

---

[1]     D. Kan. Rule 6.1(d)(1) provides litigants 14 days to submit their response to non-dispositive motions, such as defendant's Motion to Strike.

for Summary Judgment (Doc. 78).  Before the court explains why, the court introduces the facts

of this case and the governing law.

## I.   Procedural and Factual Background

### A.  Procedural Background

This is an employment dispute.  Plaintiff, a former T-Mobile employee, filed her original

Complaint more than two years ago.  Doc. 1 (Compl.).  About a year later—in November

2019—plaintiff amended her complaint.  Doc. 36 (Am. Compl.).  According to her Amended

Complaint, T-Mobile terminated her employment under circumstances that violate several

federal laws, plus one Kansas state law.[2]  Plaintiff claims T-Mobile discriminated against her on

the basis of her race, sex, and disability.  Doc. 36 at 1 (Am. Compl. ¶ 1).  Moreover, plaintiff

alleges, T-Mobile terminated her employment because she was pregnant.  *Id.* at 3 (Am. Compl. ¶

9).

Nearer to the outset of this action, plaintiff requested appointed counsel (Doc. 4).  United

States Magistrate Judge Birzer denied her request but without prejudice to refiling (Doc. 5).

After the initial scheduling conference, Judge Birzer reconsidered plaintiff's request for counsel.

Doc. 15 at 2–3 (explaining "the Court finds its perception changed" on the issue of appointment

of counsel and staying remaining scheduling "for a period of at least 30 days to permit time for

the Court to seek counsel willing to represent Plaintiff, even if for a limited time").  Judge Birzer

also set deadlines for the parties to exchange Rule 26 disclosures and ordered mediation.  *Id.* at 2,

4.

---

[2]       Plaintiff's Amended Complaint alleges violations of (1) Title VII of the Civil Rights Act of 1964
(Title VII), 42 U.S.C. §§ 2000e–2000e17; (2) 42 U.S.C. § 1981; (3) the Americans with Disabilities Act
Amendments Act (ADAAA); (4) the Kansas Act Against Discrimination (KAAD), Kan. Stat. Ann. §§ 44-
1001–44-1013; and (5) the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219.  *See generally* Doc.
36.

Not long after, Judge Birzer appointed provisional counsel "for the limited purpose of advising and assisting Plaintiff in preparing and participating in mediation." Doc. 17 at 2. Alas, mediation failed, and the court thus permitted provisional counsel to withdraw. Docs. 27, 30. And, the court allowed plaintiff to file her Amended Complaint. *See* Doc. 35.

In November 2019, the court issued a Revised Scheduling Order (Doc. 34). The Order acknowledged that the parties "already have served their initial disclosures" but hadn't yet "had the opportunity to engage in meaningful discovery." *Id.* at 2. The court the set the deadline for discovery as May 15, 2020. *Id.* at 3, 13. And, the court set July 10, 2020 as the dispositive motion deadline. *Id.* at 8, 13. The Revised Scheduling Order was clear: "Compliance with Fed. R. Civ. P. 56 and D. Kan. Rule 56.1 is mandatory[,]" meaning that dispositive motions (*i.e.*, motions for summary judgment) and "briefs that fail to comply with these rules may be rejected, resulting in summary denial of a motion or consideration of a properly supported motion as uncontested." *Id.* at 8. The court strongly encouraged the parties to consider stipulating to facts and legal issues not in dispute. *Id.*

On the same day the court entered its Revised Scheduling Order, plaintiff filed her Amended Complaint. Doc. 36 (Am. Compl.). T-Mobile filed its Answer on December 6, 2019 (Doc. 37). Also that same day, plaintiff filed a Motion for Summary Judgment (Doc. 38). Defendant responded to oppose her motion (Doc. 42). Then, a waiting game commenced.

Several months later, plaintiff moved to amend her Complaint for a second time (Doc. 58). T-Mobile opposed her request (Doc. 59). Plaintiff replied (Doc. 63). The court stayed all deadlines pending the court's decision on plaintiff's request (Doc. 62). And on June 26, 2020, Judge Birzer issued her Report and Recommendation (Doc. 64), recommending that this court deny plaintiff's request for leave to file a second amended complaint on the basis that plaintiff's

motion was untimely, would unduly prejudice defendant, and would add futile claims. The court agreed, adopting Judge Birzer's Report and Recommendation (Doc. 67), and denying plaintiff's request for leave to file a second amended complaint.

Thus, the court turned to plaintiff's Motion for Summary Judgment (Doc. 38). Concluding that plaintiff had failed to satisfy the summary judgment standard for summary judgment in her favor on any of her discrimination claims, the court denied plaintiff's Motion for Summary Judgment. Doc. 69 at 28 (citing *Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019)). The court also concluded that, "even if she had [made out a prima facie case], she has not overcome her burden under the *McDonnell Douglas* framework to show as a matter of law that defendant's legitimate, nondiscriminatory reason for the adverse employment action was merely a pretext for race, gender, or disability discrimination." *Id.* (citing *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000)). The court also denied plaintiff's request for summary judgment on her FLSA claim because the "materials and her purported facts and arguments do not demonstrate an FLSA violation without more explanation" and plaintiff hadn't "explain[ed] how her wages or defendant's reporting were inaccurate." *Id.* at 19.

Judge Birzer later entered an Amended Scheduling Order (Doc. 71), and after that, a Pretrial Order (Doc. 77). Then, T-Mobile filed its own Motion for Summary Judgment (Doc. 78), along with a Memorandum in Support (Doc. 79). Defendant also sent a Notice (Doc. 80) to plaintiff about its Motion for Summary Judgment, explaining important information about the processes she should follow if she wished to oppose it. Plaintiff responded to T-Mobile's motion to express her opposition (Doc. 81). Defendant filed a Reply (Doc. 83). And then plaintiff filed

two supplements in opposition (Docs. 85, 86), inducing T-Mobile's Motion to Strike them (Doc. 87).

These procedural details map this lawsuit's path to its present status.  The court now turns to the undisputed facts governing T-Mobile's Motion for Summary Judgment (Doc. 78).

### B.  Undisputed Facts

To determine the summary judgment facts, the court considers the facts asserted in T-Mobile's Motion for Summary Judgment, as well as the other materials submitted to the court. For instance, the court reviews plaintiff's filings, even though they fail to comply with the federal and local rules governing summary judgment.  The court has construed plaintiff's asserted facts broadly under the permissive pro se standard.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." (citation omitted)).  But, even setting aside that plaintiff's Response fails to comply with the Federal Rules of Civil Procedure and our local rules, none of her asserted facts bear upon the motion's resolution.  For instance, plaintiff asserts that she objects to *all* of T-Mobile's assertions.  Doc. 81 at 2 ("I object to the "Entirety" of the defendant "T-Mobile" summary judgment motion[.]").  At times, however, plaintiff also appears to concede some details while refuting others.  *Compare* Doc. 81-1 at 2–3 (¶ 1) (asserting plaintiff "does not contest" some details asserted by T-Mobile which also appear in the Pretrial Order), *with* Doc. 81-1 at 4 (¶ 7) ("I, the plaintiff, object to the entirety of this unjust fact.").  Regardless, plaintiff's asserted facts either lack evidence to substantiate them, are incomprehensible, or do not alter this case's outcome.  So, plaintiff's assertions either violate our local rules or simply are unhelpful to her opposition.[3]

---

[3]     *See Hampton v. Barclays Bank Del.*, 478 F. Supp. 3d 1113, 1121 (D. Kan. 2020) (explaining that to comply with the Local Rules for this federal district, "D. Kan. Rule 56.1(b)(1) requires the nonmoving

The court also is mindful of several facts stipulated in the Pretrial Order.  *See* Doc. 77 at 2.  Alongside defendant's supported assertions which plaintiff hasn't controverted, the court determines, below, the following uncontroverted facts for purposes of summary judgment.  If facts appeared genuinely controverted, the court would view them in the light most favorable to plaintiff, the party opposing summary judgment.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").  However, in this case, plaintiff hasn't presented a genuine controversy about any of the facts put forth by T-Mobile.  Thus, the court accepts as uncontroverted all of T-Mobile's factual assertions, when supported by evidence, because plaintiff failed to controvert them.  *See* D. Kan. Rule 56.1(b); *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

According to the Pretrial Order, the following facts are stipulated by both parties and therefore are undisputed.  "Plaintiff is an African-American woman."[4]  Doc. 77 at 2.  In August 2017, T-Mobile hired her to work in its Wichita call center as a full-time employee.  *Id.*  According to the company's Code of Conduct, T-Mobile is an equal opportunity employer, meaning it maintains a commitment to fair employment practices and maintaining a nondiscriminatory work environment—particularly with respect to race, sex, disability, and other

---

party to number the facts and 'refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of the movant's fact that is disputed'" (quoting D. Kan. Rule 56.1(b)(1)); *see also Conley v. Pryor*, No. 11-3200-DDC-KGS, 2015 WL 413638, at *6 (D. Kan. Jan. 30, 2015) ("The court's local rules provide that all material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." (citation, alteration, and internal quotation marks omitted)).

[4]     Plaintiff's filings consistently describe her racial identity using the phrase "African American," so the court adopts this terminology.  *See* Doc. 77 at 2 (Pretrial Order); *see also* Doc. 81-1 at 6 (Pl.'s Resp. to Def.'s Mot. for Summ. J.).

protected statuses.  *Id.*  Plaintiff's employment with T-Mobile ended, first, sometime around July 29, 2018, and then for good on October 15, 2018.  *Id.*

The following facts are provided by defendant in its Memorandum, and each is supported by evidence in the record.  Doc. 79 at 1–5 (¶¶ 1–18).  None of the following facts are controverted by plaintiff's Response (Doc. 81) because that Response either doesn't refute them with admissible evidence or fails to state a coherent disagreement.

In April 2018, Plaintiff took an approved leave of absence from her job, which was scheduled to conclude that July.  Doc. 78-1 at 2 (Davis Decl. II ¶¶ 4–5); Doc. 78-1 at 9 (Ex. 2); Doc. 78-1 at 11 (Ex. 3); Doc. 78-1 at 13 (Ex. 4).  Around that time, plaintiff didn't return to work.  Doc. 78-1 at 3 (Davis Decl. II ¶ 6); Doc. 78-1 at 13 (Ex. 4).  T-Mobile tried to reach plaintiff about her unexpected and continuing absence, but their efforts didn't succeed (in part because plaintiff's voicemail inbox couldn't accept any new messages).  Doc. 78-1 at 3 (Davis Decl. II ¶ 7); Doc. 78-1 at 13 (Ex. 4).  The same month—in July 2018—plaintiff contacted T-Mobile and told them she was seeking to extend her leave of absence.  This request meant she wished to work at the end of July.  Doc. 78-1 at 3 (Davis Decl. II ¶ 8); Doc. 78-1 at 13 (Ex. 4).  But, plaintiff didn't return to work then either.  Doc. 78-1 at 3 (Davis Decl. II ¶ 9); Doc. 78-1 at 13 (Ex. 4).  Plaintiff didn't contact T-Mobile to explain why she failed to return to work.  Doc. 78-1 at 3 (Davis Decl. II ¶ 9); Doc. 78-1 at 13 (Ex. 4).

T-Mobile contacted the third-party administrator who handles benefits administration for the company.  Doc. 78-1 at 3 (Davis Decl. II ¶ 10).  Specifically, defendant inquired whether plaintiff had applied for an extension of her approved leave.  *Id.*  The third-party administrator informed T-Mobile she hadn't.  *Id.*  So, ten days later, T-Mobile terminated plaintiff's employment.  *Id.* at 3 (Davis Decl. II ¶ 11); *Id.* at 13 (Ex. 4).  The next day, plaintiff contacted T-

Mobile and told them she *had* secured an extension of her approved leave of absence.  *Id.* at 3 (Davis Decl. II ¶ 12); Doc. 78-1 at 13 (Ex. 4).  And she was right.  Doc. 78-1 at 3–4 (Davis Decl. II ¶ 13); Doc. 78-1 at 13 (Ex. 4)

In sum, T-Mobile made an error:  the company had fired plaintiff for job abandonment when, in fact, she'd requested the necessary paperwork to extend her leave of absence.  Doc. 78-1 at 3–4 (Davis Decl. II ¶ 13).  Contrary to the company's initial belief, the third-party administrator told plaintiff she had until August 1, 2018 to supply necessary paperwork to confirm she qualified for an extension.  *Id.*  So, T-Mobile worked quickly to correct course, reinstating plaintiff's employment, along with all job-related benefits.  Doc. 78-1 at 4 (Davis Decl. II ¶ 14); Doc. 78-1 at 13 (Ex. 4).  The following month—in early August 2018—T-Mobile officially extended plaintiff's leave of absence for an extra day, meaning it would conclude on August 7, 2018.  Doc. 78-1 at 13 (Ex. 4); Doc. 78-1 at 9 (Ex. 2).

Two days later—on August 9, 2018—plaintiff requested another extension.  But she couldn't provide the paperwork T-Mobile required to confirm that she qualified for the extension.  Doc. 78-1 at 4 (Davis Decl. II ¶ 16); Doc. 78-1 at 15 (Ex. 5).  T-Mobile informed plaintiff it could wait until August 27, 2018 for plaintiff to schedule an appointment with her healthcare provider and get the paperwork required to confirm her requested extension.  *Id.* Plaintiff contacted T-Mobile on August 27, and told the company that her doctor wouldn't see her for an appointment because of an outstanding bill she owed.  Doc. 78-1 at 4 (Davis Decl. II ¶ 17); Doc. 78-1 at 15 (Ex. 5).  T-Mobile again extended plaintiff's deadline until the end of August, then until the end of September, and finally until early October.  Doc. 78-1 at 4 (Davis Decl. II ¶¶ 16–17); Doc. 78-1 at 15 (Ex. 5).

By October 15, 2018—more than two months after plaintiff's leave had expired—T-Mobile still hadn't received any updates from her about the required documentation. Nor had plaintiff returned to work. Doc. 78-1 at 4–5 (Davis Decl. II ¶ 18); Doc. 78-1 at 25 Ex. 7 (explaining, in an email to plaintiff dated October 15, 2018, that plaintiff's deadline was extended until "end of business on Monday, October 8th as [plaintiff] indicated [she] had an appointment that day" but the third-party benefits administrator "did not receive documentation to support a leave extension request by close of business on October 8, 2018" so T-Mobile "considered [plaintiff] to have voluntarily resigned from [her] employment and . . . processed [her] separation effective October 15, 2018"). T-Mobile decided on that date—October 8—to terminate plaintiff's employment on the basis of job abandonment. *Id.*; *see also* Doc. 79 at 4–5 (¶16).

T-Mobile has adopted a policy requiring all non-exempt employees, like plaintiff, to maintain records of hours worked and report that information to the company. Doc. 78-1 at 5 (Davis Decl. II ¶ 19); Doc. 78-1 at 27–84 (Ex. 8). The company also maintains similar records of the time employees work and the compensation they receive. *Id.*; *see also* Doc. 78-1 at 36–84 (Ex. 9). T-Mobile's records reflect that plaintiff was paid for all of the hours she worked while employed with the company. Doc. 78-1 at 5 (Davis Decl. II ¶¶ 20–21); Doc. 78-1 at 36–84 (Ex. 9).

## II.  Legal Standards

### A.  Pro Se Plaintiffs

Ms. Shaw is proceeding pro se—meaning she has chosen to represent herself in this action. Federal law and longstanding precedent permit her to do so. 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally without

the aid of counsel[.]"); *see also Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 522 (2007) ("[T]here is no question that a party may represent his or her own interests in federal court without the aid of counsel." (citing 28 U.S.C. § 1654)).  To some degree, pro se parties aren't held to the same standards or expectations that courts apply to licensed attorneys. "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

But, the benefits of this forgiving standard aren't endless.  The court doesn't advocate for a pro se party. *Id.* ("At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").  Instead, the forgiving standard applied to pro se parties means merely that, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail," the court should "do so despite the plaintiff's failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements." *Id.* This permissive approach applies in the context of summary judgment proceedings. *Overton v. United States*, 925 F.2d 1282, 1283 (10th Cir. 1991) (holding a pro se litigant's pleadings at the summary judgment stage of litigation should be construed liberally in accordance with *Haines*).

### B.  Summary Judgment Filing Rules and Procedures

Although the court approaches pro se pleadings with a more liberal view of their substance, pro se litigants still must comply with procedural rules or suffer the consequences of noncompliance. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) ("This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." (citation and internal quotation marks omitted)); *Ogden v. San Juan Cnty.*, 32 F.3d

452, 455 (10th Cir. 1994) (explaining a litigant's pro se status "does not excuse the obligation

. . . to comply with the fundamental requirements of the Federal Rules of Civil . . . Procedure").

This duty extends to the court's local rules. *See Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir.

1992) (explaining pro se parties' pleadings are construed liberally but the pro se litigant

"nevertheless must follow the same rules of procedure that govern other litigants" (citation

omitted)).  It also extends to rules governing arguments and evidence at the summary judgment

stage of litigation. *See Ellibee v. Posey*, No. 02-3233-JAR, 2005 WL 664043, at *1 (D. Kan.

Jan. 11, 2005) (liberally construing pro se litigant's motion for summary judgment, but

explaining "'the court will not construct arguments or theories for the plaintiff in the absence of

any discussions on those issues'" and that pro se plaintiffs must comply with the fundamental

rules of procedure (quoting *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.

1991))).

For these reasons, the court has no duty to search the record on a litigant's behalf to find

evidence supporting her summary judgment interests.  *See Cross v. Home Depot*, 390 F.3d 1283,

1290 (10th Cir. 2004) ("[O]n a motion for summary judgment, 'it is the responding party's

burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on

the trial court to conduct its own search of the record.'" (quoting *Downes v. Beach*, 587 F.2d

469, 472 (10th Cir. 1978))); *see also id.* ("'The district court [is] not obligated to comb the record

in order to make [the plaintiff's] arguments for him.'" (quoting *Mitchell v. City of Moore*, 218

F.3d 1190, 1199 (10th Cir. 2000))).  These standards apply to all litigants, whether they're

proceeding pro se or with counsel's assistance. *See Handy v. City of Sheridan*, 636 F. App'x

728, 743 n.15 (10th Cir. 2016) (affirming summary judgment against a pro se plaintiff and

concluding the district court had no duty to review the record independently for evidence that

might negate summary judgment, and also concluding the district court didn't err by failing to consider evidence that the pro se plaintiff attached to his complaint but did not cite in his opposition to summary judgment (citing *Cross*, 390 F.3d at 1290)); *see also McKinzy v. I.R.S.*, 367 F. App'x 896, 897 (10th Cir. 2010) (affirming summary judgment against a pro se plaintiff who alleged generally that disputed issues of material fact precluded summary judgment but failed to identify any part of the record to support his claim because "'[j]udges are not like pigs, hunting for truffles buried in briefs'" (quoting *Gross v. Burggraf Contr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995))). So, the court isn't required to forage for facts supporting plaintiff's interests. That burden belongs to the litigant.[5]

## C. Plaintiff's Sur-replies

After responding to defendant's Motion for Summary Judgment, plaintiff filed two additional responses (Docs. 85, 86). Defendant then filed a Motion to Strike both of plaintiff's filings (Doc. 87). Under D. Kan. Rule 7.1(c), briefing on motions is limited to the motion (with memorandum in support), a response, and a reply. Thus, each of plaintiff's additional filings (Docs. 85, 86) is a sur-reply. "A surreply is a movant's second reply to another party's opposition on a motion." *Ramos v. Foam America, Inc.*, CIV No. 15-980 CG/KRS, 2018 WL 987243, at *3 (D.N.M. Feb. 20, 2018) (citation omitted). Technically speaking, Plaintiff's filings are a "surresponse"—a "second response by someone who opposes a motion, filed after a movant's reply." *Id.* (citation omitted). Regardless, "the terms have been used interchangeably." *Id.* (citation omitted).

---

[5]     The Pretrial Order emphasizes these requirements. *See generally* Doc. 77. The same is true for the Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment (Doc. 80), which defendant served on plaintiff as required. *See* D. Kan. Rule 56.1.

Sur-replies typically aren't allowed.  *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004), *aff'd on other grounds*, 189 F. App'x. 752 (10th Cir. 2006).  Instead, they are permitted only with leave of court and under "rare circumstances" after good cause is shown. *Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998) (citations and internal quotation marks omitted); *see also Ambac Assurance Corp. v. Fort Leavenworth Frontier Heritage Cmtys., II, LLC,* No. 15-CV-9596-DDC-JPO, 2017 WL 1035953, at *1 (D. Kan. Mar. 17, 2017).  For example, when a moving party uses their reply to present new material—*i.e.*, new evidence or new legal arguments—and if the court *relies* on that new material, it should give the nonmoving party an opportunity to respond.  *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003); *see also E.E.O.C. v. Int'l Paper Co.*, No. 91-2017-L, 1992 WL 370850, at *10 (D. Kan. Oct. 28, 1992).

The rules governing sur-replies are grounded in common sense.  They "are not only fair and reasonable, but they assist the court in defining when briefed matters are . . . submitted and in minimizing the battles over which side should have the last word."  *Humphries*, 1998 WL 982903, at *1 (citation and internal quotation marks omitted); *see also Int'l Paper Co.*, 1992 WL 370850, at *10 (explaining that briefing between parties "must have an end point and cannot be permitted to become self perpetuating").

Thus, sur-replies are the exception, not the rule.  *Taylor*, 350 F. Supp. 2d at 900.  Even in cases involving good cause for permitting a sur-reply, courts have more than one option.  The court can consider the new material and therefore grant the sur-reply or it can elect to do nothing with the new material, at least when the information doesn't drive the outcome.  *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164–65 (10th Cir. 1998) (explaining that district court did

not abuse its discretion at summary judgment when it elected to deny party's request to file a sur-reply but also "grant[ed] summary judgment for the movant without relying on the new materials").

### D.  Defendant's Motion for Summary Judgment

The main event here is defendant T-Mobile's Motion for Summary Judgment (Doc. 78). Under Fed. R. Civ. P. 56(a), a party may move for summary judgment by "identifying each claim . . . on which summary judgment is sought" and showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. 1457, 1460 (D. Kan. 1995).  The court explains the meaning of this language in greater detail, below.  For now, the court notes that a motion for summary judgment is dispositive, meaning that, if granted, the motion will dispose of—*i.e.*, resolve—individual claims or even an entire lawsuit without any need for a trial.  *See, e.g.*, *White v. Sabatino*, Civ. Nos. 04-00500 ACK/LEK, 05-00025 ACK/LEK, 2007 WL 2750604, at *2 (D. Haw. Sept. 17, 2007) ("Black's Law Dictionary defines 'dispositive' as 'Being a deciding factor; (of a fact or factor) bringing about a final determination.'" (citation omitted)).

When courts apply the legal standard governing motions for summary judgment, they "view the evidence and make inferences in the light most favorable to the non-movant."  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).  "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145, 1150 (D. Kan. 2012) (explaining "[a]n issue of fact is

14

genuine if the evidence allows a reasonable jury to resolve the issue either way" (internal

quotation marks and citation omitted)).  "An issue of fact is 'material' 'if under the substantive

law it is essential to the proper disposition of the claim' or defense."  *Nahno-Lopez*, 625 F.3d at

1283 (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing

*Anderson*, 477 U.S. at 248)).

The party seeking summary judgment bears "'both the initial burden of production on a

motion for summary judgment and the burden of establishing that summary judgment is

appropriate as a matter of law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir.

2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).

So, the moving party must supply "the court with the basis for the motion[,]" and it also must

specify "those portions of the record that show the absence of a genuine issue of material fact."

*Affiliated Foods Midwest Coop., Inc. v. Wolf Creek Marketplace*, No. 10-2012-JAR, 2011 WL

231420, at *1 (D. Kan. Jan. 24, 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986)).

When the party seeking summary judgment won't bear the burden of persuasion at trial,

it still faces the initial burden of production on summary judgment.  But it needn't "'negate the

non-movant's claim, [and] need only point to an absence of evidence to support the non-

movant's claim.'"  *Kannady*, 590 F.3d at 1169 (quoting *Sigmon v. CommunityCare HMO, Inc.*,

234 F.3d 1121, 1125 (10th Cir. 2000)); *see also In re Urethane Antitrust Litig.*, 913 F. Supp. 2d

at 1150.  Once the party requesting summary judgment "carries the initial burden, the

nonmovant" must "bring forward specific facts showing a genuine issue for trial as to those

dispositive matters for which it carries the burden of proof."  *Kannady*, 590 F.3d at 1169

(citation omitted).

"If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon the pleadings[.]"  *Adler*, 144 F.3d at 671 (citations omitted).  Instead, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Id.* (internal quotation marks and citations omitted). Facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Id.* (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), *cert. denied*, 506 U.S. 1013 (1992)).  "Under [Fed. R. Civ. P.] 56(c) summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citations and internal quotation marks omitted).

Last, summary judgment isn't a "disfavored procedural shortcut."  *Celotex*, 477 U.S. at 327.  Instead, our rules of procedure view it as a fully appropriate procedure "designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Id.* (quoting Fed. R. Civ. P. 1). "The very purpose of a summary judgment action is to determine whether trial is necessary." *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Whether trial is "necessary" in this case is a question the court addresses, below.  *Id.*  But first, the court must decide defendant's Motion to Strike Plaintiff's Sur-replies to Motion for Summary Judgment (Doc. 87).

III.    **Analysis**

    **A.  Defendant's Motion to Strike Plaintiff's Sur-replies to Motion for Summary Judgment**

    T-Mobile offers two reasons why the court should grant it summary judgment.  *First*, T-Mobile contends that the court should strike plaintiff's filings "because they are not allowed under the applicable rules, and plaintiff did not request leave or provide any basis as to why such filings could be necessary."  *Id.* at 1.  And defendant correctly recites the governing legal standard for sur-replies.  *Id.* at 2.  Defendant also correctly notes that Ms. Shaw's status as a pro se litigant entitles her to certain benefits, but not a free pass on the court's procedural rules.  *Id.* ("Although courts must construe the substantive pleadings of pro se parties liberally, pro se litigants still must comply with the procedural rules or suffer the consequences of noncompliance." (citations omitted)).[6]

    *Second*, T-Mobile argues that plaintiff's filings also are doomed because a "party opposing a summary judgment motion may file a surreply only if the movant cites new evidence in reply[,]" and "T-Mobile's reply contained no new evidence."  *Id.* at 3 (citing *COPE v. Kan. State Bd. of Educ.*, 71 F. Supp. 3d 1233, 1238 (D. Kan. 2014)).  "Rather," it says, the Reply "was limited to replying to plaintiff's responses to T-Mobile's statement of facts and reiterating its arguments from its opening brief that plaintiff has failed to meet her burden of proof with regard to her claims."  *Id.*

---

[6]     The court is mindful of another applicable rule in this context:  D. Kan. Rule 7.4(b).  Plaintiff could've responded—but didn't—to defendant's Motion to Strike.  Under D. Kan. Rule 7.4(b), unopposed motions are "ordinarily" granted "without further notice."  *See also Nielsen*, 17 F.3d at 1277 ("This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." (citations and internal quotation marks omitted)).  In sum, the court could grant defendant's motion merely because plaintiff failed to respond to it.  D. Kan. Rule 7.4(b).  The court nonetheless explains several additional reasons why the same outcome is merited here.

On its first argument, defendant is right. "Surreplies are permitted in rare cases, but not without leave of court." *Taylor*, 350 F. Supp. 2d at 900 (citing *Humphries*, 1998 WL 982903, at *1). In *Taylor*, "Defendants ask[ed] the Court to strike plaintiff's surreply, which was filed without leave of court[.]" *Id.* Because the *Taylor* plaintiff had filed his sur-reply without leave of court, in contravention of the rules governing sur-replies, the court "therefore sustain[ed] defendants' motion to strike plaintiff's surreply and the Court . . . disregard[ed] plaintiff's surreply in analyzing defendants' motion for summary judgment." *Id.* The same outcome is appropriate here because plaintiff didn't seek leave of court before filing her sur-replies. *See id.*; *see also* D. Kan. Rule 7.1(c) (explaining briefing on motions is limited to the motion (with memorandum in support), a response, and a reply).

Defendant's second argument also is correct. "T-Mobile's reply. . . . was limited to replying to plaintiff's responses . . . and reiterating its arguments from its opening brief that plaintiff has failed to meet her burden of proof with regard to her claims." Doc. 87 at 3. "T-Mobile did not present new factual information as would deprive plaintiff of a meaningful opportunity to respond." *Id.* Even construing plaintiff's filings liberally, the court can't find a reason they're merited under these circumstances. *See, e.g.*, *Green*, 420 F.3d at 1196–97 (holding district court didn't err in denying litigant leave to file a sur-reply at the summary judgment stage where opposing party's reply brief "did not raise any new legal arguments" and its "main purpose [was] to point out the defects in [their opponent's] response and why she had failed to establish a genuine issue of material fact").

Also, and again as in *Taylor*, "[e]ven if the Court considered the arguments in plaintiff's surreply, it would reach the same result on defendants' motion for summary judgment." *Taylor*, 350 F. Supp. 2d at 900 n.14. This conclusion isn't uncommon. *See Lindsey v. Cook*, No. 5:19-

cv-03094-HLT, 2021 WL 483855, at *2 n.3 (D. Kan. Feb. 4, 2021) (concluding "[r]egardless" of whether the court considered any of plaintiff's multiple supplemental filings—each of them submitted without leave of court and without supplying a justification for their need in the litigation—"they do not change the outcome of the summary judgment motion"); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, No. 18-2408-JWL, 2020 WL 1676487, at *2 (D. Kan. Apr. 6, 2020) (explaining "the proposed sur-reply does not add anything relevant to the analysis (and the arguments would not change the outcome here at any rate)"); *COPE*, 71 F. Supp. 3d at 1240 (explaining the "Court nevertheless has reviewed plaintiffs' proposed surreply and has determined that its arguments do not alter the outcome of defendants' motion" and accordingly the "Court would reach the same result on defendants' Motion to Dismiss regardless").

Either of T-Mobile's arguments in support of its motion would suffice, so their combination does too. Defendant's Motion to Strike Plaintiff's Surreplies to Motion for Summary Judgment (Doc. 87) is granted.

### B. Defendant's Motion for Summary Judgment

T-Mobile concedes it erred in July 2018, when plaintiff's employment was terminated. Doc. 79 at 1 ("Plaintiff . . . was inadvertently terminated . . . after an apparent miscommunication with a third-party benefits administrator led the company to conclude she failed to timely return from a leave of absence."). But, it says, the company corrected its error, and quickly. *Id.* ("Immediately after being informed of the error, T-Mobile reinstated plaintiff's employment and offered her additional time to return to work or obtain proper authorization to extend her time off."). Regardless, defendant contends, none of this had anything to do with discrimination. *Id.* at 6 ("Simply put, plaintiff cannot offer anything to suggest or infer that her termination was the

result of an unlawful discriminatory motive, as opposed to an inadvertent error followed by her refusal to accept T-Mobile's offer that she return to work.").  The court agrees with T-Mobile's claim that it deserves summary judgment against all of plaintiff's claims.  Below, the court analyzes each of these claims under the governing legal frameworks.

### 1.  Plaintiff's Claims Under Title VII of the Civil Rights Act of 1964

With the passage of Title VII as part of the Civil Rights Act of 1964, "Congress outlawed discrimination in the workplace on the basis of race, color, religion, sex, or national origin." *Bostock v. Clayton Cnty, Ga.*, 140 S. Ct. 1731, 1737 (2020).  Relevant here, discrimination on the basis of sex includes discrimination on the basis of pregnancy.[7]  *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1191.  "To prevail under Title VII, a plaintiff must show, through either direct or indirect evidence, that the discrimination complained of was intentional."  *Id.*  "A plaintiff who lacks direct evidence of intentional discrimination may use the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 . . . (1973), to demonstrate intentional discrimination."  *Id.*  Plaintiff hasn't adduced any direct evidence of discrimination, so the *McDonnell Douglas* framework guides the court's analysis.

Under this framework, a plaintiff "bears the initial burden of establishing a prima facie case by a preponderance of the evidence."  *Id.*  A plaintiff makes this showing—for either race or pregnancy discrimination claims—by bringing forth evidence demonstrating:  (1) she is within

---

[7]     Title VII didn't always protect workers from discrimination because of pregnancy.  "In 1976, the Supreme Court held that an employer's disability plan did not violate Title VII although it excluded pregnancy-related disabilities."  *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1190–91 (citing *Gen. Elec. Co. v. Gilbert*, 429 U.S. (1976)).  Congress responded to *Gilbert* by passing the Pregnancy Discrimination Act, Pub. L. No. 95-555, 92 Stat. 2076 (1978), which superseded *Gilbert*.  Since then, "the definitional section of Title VII was amended" to add language providing the "terms 'because of sex' or 'on the basis of sex' include . . . pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes[.]"  *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1191 (quoting 42 U.S.C. § 2000e(k)).

the protected class; (2) she was doing satisfactory work at her job; (3) she was discharged or received unfavorable treatment; and (4) her position remained open and was ultimately filled by a nonpregnant or non-African American individual *or* she was treated less favorably than others who weren't pregnant or African American but were similar in their ability or inability to do the same work. *Atchley v. Nordam Grp., Inc.*, 180 F.3d 1143, 1148 (10th Cir. 1999); *Wiseman v. Wal-Mart Stores, Inc.*, No. 08-1244-EFM, 2009 WL 10706901, at *2 (D. Kan. July 23, 2009); *see also Singh*, 936 F.3d at 1037 (explaining the "specific test for a prima facie case" will vary depending on context, but the key inquiry is whether plaintiff demonstrated an adverse employment action that "occurred under circumstances which give rise to an inference of unlawful discrimination" (citation and internal quotation marks omitted)). Stated simply, plaintiff must show she was treated differently than similarly situated employees who aren't members of her protected class or classes.

If plaintiff satisfies her initial burden of producing evidence for her prima facie case, "plaintiff raises a rebuttable presumption that the defendant unlawfully discriminated against her." *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1191. This means that the "burden of production then shifts to the defendant who must articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff." *Id.* "If the defendant is able to articulate a facially nondiscriminatory reason for the adverse employment action," the burden shifts again—back to plaintiff, who must "show that her [race or sex, including for example her] pregnancy was a determinative factor in the defendant's employment decision, or show that defendant's explanation for its action was merely pretext." *Id.* (citation and internal quotation marks omitted). At the end of the day, plaintiff must prove intentional discrimination. *Id.* at 1191–92.

Title VII also prohibits retaliation discrimination.  *Poff v. Okla. ex rel. Okla. Dep't of Mental Health & Substance Abuse Servs.*, 683 F. App'x 691, 701 (10th Cir. 2017).  "To establish a prima facie case of retaliation, plaintiff must show that:  (1) he or she engaged in protected activity; (2) he or she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action."  *Id.* at 701–02 (citation, alterations, and internal quotation marks omitted); *see also Singh*, 936 F.3d at 1042 (explaining the elements required to satisfy one's prima facie burden for a retaliation claim and how the action taken against the individual must be one a "reasonable person would have found materially adverse").  Protected activities include engaging in protected opposition to a practice made an unlawful employment practice under Title VII or filing a charge of discrimination under Title VII.  *Poff*, 683 F. App'x at 702; *Singh*, 936 F.3d at 1042.  The *McDonnell Douglas* burden-shifting framework applies to retaliation claims, too.  *Singh*, 936 F.3d at 1042.[8]

### a.  Racial Discrimination

Although plaintiff bears the ultimate burden at trial, T-Mobile—*i.e.*, the moving party at the summary judgment stage—bears the more immediate burden.  *Kannady*, 590 F.3d at 1169 (explaining the moving party at summary judgment bears "both the initial burden of production" as well as "the burden of establishing that summary judgment is appropriate as a matter of law" (citation and internal quotation marks omitted)).  Because this conflict involves alleged employment discrimination and plaintiff hasn't provided direct evidence, the *McDonnell Douglas* burden-shifting framework applies.

---

[8]      Plaintiff's earlier filings mentioned a cause of action involving retaliation.  *See* Doc. 69 at 23–28.  But the Pretrial Order makes no reference to a retaliatory discharge cause of action.  The court thus recites the foregoing details for reference, but not because plaintiff has alleged a cause of action under Title VII for retaliation in response to protected activities.

22

"T-Mobile concedes that plaintiff is a member of a protected class" because she is an African-American female who "suffered an adverse employment action," but the company argues plaintiff still fails to establish a prima facie case of discrimination because she "has offered nothing to suggest she was treated differently than similarly situated employees who were not members of her purported protected class."  Doc. 79 at 7–8.  T-Mobile also states, "for purposes of [its] motion, T-Mobile does not affirmatively dispute that [plaintiff] met T-Mobile's expectations prior to her July 2018 termination."  *Id.* at 7.

In T-Mobile's view, plaintiff checks a few of the boxes necessary to establish a prima facie case of racial discrimination under Title VII, but not all of them.  Although plaintiff is a member of a protected class given her sex and race, T-Mobile says she hasn't shown she was treated differently than similarly situated employees who aren't members of her protected class or classes.  *Id.* at 7–8 ("However, plaintiff has offered nothing to suggest she was treated differently than similarly situated employees who were not members of her purported protected class.").

T-Mobile is right.  Although the summary judgment standard means T-Mobile has the burden of proving no material issue exists for a jury to decide, plaintiff still must shoulder a key burden of proof on the cause of action she alleges.  Here, plaintiff claims her race (as well as her sex and pregnancy) was the real reason for her discharge.  *See* Doc. 81-1 at 4 ("This information was harmful to the fullest effects towards the plaintiff based on her gender, race, and disabilities and should be sued to support the objectives of the premature facts the defendant 'T-Mobile' relies on for a summary of the judgment in its favor.").

But, plaintiff hasn't adduced any evidence to discharge her burden on this front.  As the plaintiff, the *McDonnell Douglas* framework obligates her to clear this initial hurdle of proving a

prima facie case of discrimination by producing evidence to that effect. *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1191 ("A plaintiff relying on the *McDonnell Douglas* methodology bears the initial burden of establishing a prima facie case by a preponderance of the evidence."). This finding is no different than the court's conclusion when reviewing plaintiff's earlier Motion for Summary Judgment. Doc. 69 at 24 ("Plaintiff has provided no evidence showing non-pregnant or non-African American employees weren't terminated if they failed to return to work when defendant believed their approved leave had expired."). Likewise, plaintiff hasn't provided "any evidence showing she was treated less favorably than others who were not pregnant or African American when seeking her leave extensions or engaging in other behavior similar to plaintiff's behavior here." *Id.* (citing *Lee v. TransAm Trucking, Inc.*, No. 17-2150, 2018 WL 3432045, at *7–8 (D. Kan. July 16, 2018)).

Defendant argues another reason to find in its favor as a matter of law. "Even if [plaintiff] somehow could be deemed to satisfy her prima facie burden, T-Mobile has offered legitimate and non-discriminatory detailed explanations as to the circumstances regarding both her initial separation from employment in July 2018, her reinstatement, and her subsequent termination in October 2018." Doc. 79 at 8 (citations omitted).

For plaintiff's initial, inadvertent termination, defendant supplies evidence proving its point: it made an error and corrected it. Doc. 78-1 at 3–4 (Davis Decl. II ¶¶ 13–14) (explaining T-Mobile contacted third-party benefits administrator "and confirmed that, contrary to information [the third-party benefits administrator] had previously provided, plaintiff had in fact" taken steps to extend her leave of absence, so "T-Mobile promptly contacted plaintiff to inform her that the termination was the result of an administrative error . . . and plaintiff's employment would be reinstated effective immediately"); Doc. 78-1 at 11 (Ex. 3) (providing email between

T-Mobile employee and plaintiff, in which T-Mobile employee explains "I wanted to again confirm for you your employment was reinstated at the end of last week so the separation piece is no longer reflect[ed] in your work history" and "[y]ou have not lost anything as a result of this situation and there is no gap in your employment"); Doc. 78-1 at 13 (Ex. 4) (recounting steps taken following discovery of this administrative error, including an "action taken" to ensure "employee was reinstated due to [third-party benefits administrator] error" and also explaining plaintiff "was confused" during a prior email exchange about this situation "about what a reinstatement was" so T-Mobile employees "explained how everything will be reinstated and had to explain there is not gap in employment").

As for plaintiff's ultimate termination from the company, which defendant contends resulted from her failure to show up for work after reinstatement, T-Mobile provides proof of this decision as well.  Doc. 78-1 at 4–5 (Davis Decl. II ¶ 18) (explaining "more than two months after plaintiff's extended leave had expired, T-Mobile had not received from plaintiff information regarding a request for an additional extension of her leave, nor had plaintiff returned to work or provided any information regarding her intention of doing so[,]" thus T-Mobile "terminated [p]laintiff's employment due to job abandonment"); Doc. 78-1 at 25 (Ex. 7) (providing a copy of October 15, 2018 email from T-Mobile employee to plaintiff explaining on October 4, 2018, T-Mobile staff "extended the due date on your supporting documentation until the end of business on Monday, October 8th" but the third-party benefits administrator "did not receive documentation to support a leave extension request by close of business on October 8, 2018[,]" so T-Mobile "considered [plaintiff] to have voluntarily resigned [her] employment and have processed [her] separation effective October 15, 2018").

So, defendant contends that plaintiff's initial termination from the company, in July 2018, was, "at worst, a mistake based largely on a miscommunication with a third-party provider[.]" Doc. 79 at 8 (citations omitted).  And T-Mobile provides admissible proof of this assertion.  Doc. 78-1 at 3–4 (Davis Decl. II ¶¶ 13–14); Doc. 78-1 at 11 (Ex. 3); Doc. 78-1 at 13 (Ex. 4).  As for plaintiff's second and final termination, T-Mobile says a legitimate and nondiscriminatory reason explains this situation:  "it was based on her failure to apply for an extension or return to active employment after the verified expiration of her leave."  Doc. 79 at 9.  Here again, defendant supplies evidence to support its assertion.  Doc. 78-1 at 4–5 (Davis Decl. II ¶ 18); Doc. 78-1 at 25 (Ex. 7).

T-Mobile's showing shifts the burden back to plaintiff to show that defendant's proffered explanation is merely pretext for discrimination.  *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1191; *see also Anderson v. Cato Corp.*, 444 F. App'x 280, 282, 284 & n.2 (10th Cir. 2011) (assuming the plaintiff could establish a prima facie case of discrimination and describing how a plaintiff can establish an employer's explanation was pretext for unlawful discrimination); *McBride v. Medicalodges, Inc.*, Nos. 06-2535-JWL, 06-2536-JWL, 06-2538-JWL, 2008 WL 2699905, at *4 (D. Kan. July 3, 2008) (explaining that if plaintiff can show a prima facie case of race discrimination for her termination from employment, defendant assumes the summary judgment burden to establish a "legitimate, non-discriminatory reason" for the termination is "exceedingly light," and, if met, plaintiff must show the reason offered is pretextual to survive summary judgment (citations and internal quotation marks omitted)); *Lee*, 2018 WL 3432045, at *8–9 (concluding defendant provided a legitimate, non-discriminatory reason for terminating plaintiff's employment:  "insubordinate and unprofessional behavior" and plaintiff hadn't shown

this reason was pretext for unlawful discrimination).  Plaintiff hasn't provided the court any evidence or plausible arguments that could support a finding of pretext.

To bring things full circle, T-Mobile is correct.  Plaintiff hasn't established her prima facie case under the *McDonnell Douglas* framework.  *Singh*, 936 F.3d at 1037 (citation and internal quotation marks omitted).  And even if she had, defendant has provided a legitimate, nondiscriminatory reason for her termination.  *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1191.  Plaintiff could have offered a reason for the court to hold T-Mobile's explanation suspect—*i.e.*, that it's pretext for unlawful discrimination violating Title VII.  *Id.*  She didn't.  T-Mobile shouldered its "initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law."  *Kannady v. City of Kiowa*, 590 F.3d at 1169 (citation and internal quotation marks omitted).  So, T-Mobile carries the day, and the court thus grants T-Mobile's Motion for Summary Judgment against that claim.

### b.  Sex (*i.e.*, Pregnancy) Discrimination

Plaintiff also has alleged discrimination on the basis of her sex.  *See* Doc. 77 at 3 (Pretrial Order) ("Plaintiff believes because of her pregnancy, known pregnancy conditions and complications she experienced prior to and during her continuous medical leave of absences, her gender, race, and her short-term disabilities were the factors the Defendant used to terminate and/or separate the plaintiff's employment.").  Here, the analysis is no different than for plaintiff's claim of racial discrimination because both claims are considered under the *McDonnell Douglas* burden-shifting framework.  Indeed, T-Mobile's Memorandum in Support of its Motion for Summary Judgment groups these arguments together.  Doc. 79 at 6–9.

Here also, plaintiff hasn't satisfied the burdens she assumes as the party bringing suit under a cause of action tied to Title VII.  That is, plaintiff hasn't produced evidence to support an inference of unlawful discrimination.  Thus, she hasn't satisfied her burden of proving a prima facie case of sex-based discrimination.  *See Horizon/CMS Healthcare Corp.*, 220 F.3d at 1191. Even if she had, plaintiff hasn't responded to defendant's legitimate, nondiscriminatory explanation by showing either that her pregnancy was determinative of the employment decision or that T-Mobile's explanation is merely pretext for discrimination.  *Id.* ("If the defendant is able to articulate a facially nondiscriminatory reason for the adverse employment action, the plaintiff can avoid summary judgment only if she can show that her 'pregnancy was a determinative factor in the defendant's employment decision, or show the defendant's explanation for its action was merely pretext.'" (quoting *Atchley*, 180 F.3d at 1148–49)).  Accordingly, and as with her claim of racial discrimination, T-Mobile is entitled to summary judgment on plaintiff's claim of sex-based discrimination in violation of Title VII.  *Id.* at 1191–92 ("Although the burden of production shifts from plaintiff to defendant and back to plaintiff under the *McDonnell Douglas* framework, the ultimate burden of proving intentional discrimination is borne by the plaintiff." (citation omitted)).  The court thus grants T-Mobile's Motion for Summary Judgment against that claim.

### 2.  Plaintiff's ADAAA Discrimination Claims

Plaintiff also asserts a cause of action under the Americans with Disabilities Act Amendments Act (ADAAA).  In her view, T-Mobile's decision to terminate her employment hinged on "her pregnancy, known pregnancy conditions and complications she experienced prior to and during her continuous medical leave of absences[.]"  Doc. 77 at 3 (Pretrial Order).

28

The ADAAA "prohibits employers from discriminating against employees on the basis of disability and requires employers to make 'reasonable accommodations' to 'qualified individual[s],' unless the accommodations impose an undue hardship on the employer." *E.E.O.C. v. Tricore Reference Labs.*, 849 F.3d 929, 933 (10th Cir. 2017) (quoting 42 U.S.C. §§ 12112(a), (b)(5)(A)). A "'qualified individual' . . . is someone who, 'with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Id.* (quoting 42 U.S.C. § 12111(8)). The ADAAA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" 42 U.S.C. § 12102(1).

For her prima facie case under the ADAAA, plaintiff "must show that (1) [she] is disabled as defined under the ADAAA; (2) [she] is qualified, with or without reasonable accommodation by the employer, to perform the essential functions of the job; and (3) [she] was discriminated against because of [her] disability." *Adair v. City of Muskogee*, 823 F.3d 1297, 1035 (10th Cir. 2016) (citation omitted). The *McDonnell Douglas* burden-shifting framework applies to claims arising under the ADAAA in which direct evidence doesn't exist to prove unlawful discrimination. *Lee*, 2018 WL 3432045, at *5. Thus, this framework applies to plaintiff's ADAAA claim.

The court is mindful of a recent decision from our Circuit, *Skerce v. Torgeson Elect. Co.*, __ Fed. App'x __, 2021 WL 1541506, at *5 (10th Cir. Apr. 20, 2021), where the Circuit held the district court had erred because it hadn't analyzed (at least not explicitly) plaintiff's disability discrimination claims under the ADAAA, and instead referenced only the ADA. Here, T-Mobile's briefs reference the ADA, but its arguments sound in the analysis required by the ADAAA. *See* Doc. 79 at 11 ("Accordingly, for any or all of these reasons, any claim of a

violation of the ADA is also subject to summary judgment.").  The court has no trouble understanding T-Mobile to mean that plaintiff's allegations, under the ADAAA, fall short of legal sufficiency.  Regardless, the distinction makes no difference in this case because applying either version of the law—*i.e.*, the ADA or the ADAAA—would produce the same outcome.  The amendments codified in 2008 as part of the ADAAA don't affect this case's outcome.  Below, the court explains why this is so.

With reference to the appropriate governing framework for plaintiff's disability discrimination claim, defendant argues there's no way for plaintiff to establish facts proving her case.  Doc. 79 at 9 ("Plaintiff also brings a claim for disability discrimination, but . . . she cannot present any genuine disputed facts that might allow her to carry her case to a jury.").  For the first element of her prima facie case, T-Mobile argues "plaintiff references the existence of [pregnancy-related] complications in her pleadings and the Pre-Trial Order," but "she never explained how they rendered her disabled under the applicable statutes, and therefore cannot establish the first element of her prima facie case."  *Id.* at 10.  As for the second element, "T-Mobile will not, at this stage, challenge the second element" because plaintiff also can't demonstrate the third prong—*i.e.*, "she cannot point to anything that might suggest she was subject to discrimination because of any pregnancy-related impairments[.]"  *Id.*  "Standing alone," T-Mobile contends plaintiff's "inability to establish two elements of her prima facie case is fatal to her claim and supports the entry of summary judgment."  *Id.*

Defendant is right about this first point.  Plaintiff hasn't satisfied the burden she bears as a plaintiff alleging discrimination on the basis of pregnancy-related complications.  Even if the court were to assume plaintiff satisfied the first and second prongs of the *McDonnell Douglas* framework, in no way has she alleged facts creating a genuine dispute around the third prong:

that T-Mobile fired her because of her alleged disability.  *Gudenkauf v. Stauffer Commc'ns, Inc.*, 922 F. Supp. 465, 472 (D. Kan. 1996).

Moving beyond the prima facie case, another layer of the *McDonnell Douglas* framework provides a second reason plaintiff falls short.  "T-Mobile has provided properly supported details regarding its legitimate bases for any decisions it made regarding plaintiff's employment, and nothing in plaintiff's briefing supports the suggestion that these explanations are a pretext for unlawful disability discrimination."  Doc. 79 at 10; *see also Horizon/CMS Healthcare Corp.*, 220 F.3d at 1191 ("If the defendant . . . articulate[s] a facially nondiscriminatory reason for the adverse employment action, the plaintiff can avoid summary judgment only if she can show that her 'pregnancy was a determinative factor in the defendant's employment decision, or show the defendant's explanation for its action was merely pretext.'" (quoting *Atchley*, 180 F.3d at 1148–49)).  Defendant is right about its second point, too.

The court has construed plaintiff's filings liberally, as it must for pro se litigants.  *Hall*, 935 F.2d at 1110.  But there's simply nothing in the summary judgment record to support a genuine dispute about the fundamental facets plaintiff must support to survive summary judgment.  *Spaulding*, 279 F.3d at 904 ("[S]ummary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (citations and internal quotation marks omitted)).  T-Mobile is entitled to summary judgment against plaintiff's claim involving pregnancy-related discrimination under the ADAAA.  The court thus grants T-Mobile's Motion for Summary Judgment against that claim.

### 3.   Plaintiff's Claims Under the Kansas Act Against Discrimination

Consistent with federal statutes, Kansas state law also prohibits workplace discrimination.  The Kansas Act Against Discrimination (KAAD), Kan. Stat. Ann. §§ 44-1001–44-1013, bars employment discrimination on the basis of "race, religion, color, sex, disability, national origin or ancestry[.]"  Kan. Stat. Ann. §§ 44-1001; 44-1009(a).  Plaintiff's Amended Complaint alleges a cause of action under the KAAD "because of my Sex and Disability[.]"  Doc. 36 at 1 (Am. Compl.) (citing Kan. Stat. Ann. § 44-1009(a)(1)).

Disability discrimination claims under the KAAD are analyzed similarly to claims arising under the ADAAA.  *See Hutchings v. Kuebler*, 5 F. Supp. 2d 1186, 1193 n.6 (D. Kan. 1998) (Lungstrum, J.) ("Federal court decisions analyzing and interpreting the ADA are persuasive authority in analyzing plaintiff's KAAD claims." (citations omitted)); *see also Norwood v. United Parcel Serv., Inc.*, No. 19-2496-DDC-JPO, 2020 WL 5802078, at *7 (D. Kan. Sept. 29, 2020) (discussing the logical overlap between the ADAAA and KAAD).  And, the KAAD defines disability in a similar fashion.  *See* Kan. Stat. Ann. § 44-1002(j) (defining "disability").  KAAD claims for race and sex discrimination are analyzed in the same manner as claims arising under Title VII.  *See Singh*, 936 F.3d at 1042 (applying the same burden-shifting framework to KAAD and Title VII discrimination and retaliation claims); *Duffey v. Bd. of Comm'rs of Butler Cnty., Kan.*, No. 08-1186-WEB, 2011 WL 1118585, at *9–10 (D. Kan. Mar. 25, 2011) (analyzing KAAD and Title VII gender discrimination claims together); *see also Schweitzer-Reschke v. Avnet, Inc.*, 874 F. Supp. 1187, 1192 n.3 (D. Kan. 1995) (Lungstrum, J.) ("Kansas state courts interpreting the anti-discrimination provisions of the KAAD have applied the same analyses as those used in Title VII cases in federal court and look to federal court opinions as persuasive authority regarding comparable issues pursuant to the KAAD." (citation omitted)).

Thus, the analysis for plaintiff's KAAD claim is no different than her ADAAA and Title VII allegations. Plaintiff hasn't alleged facts to make a prima facie case of discrimination under the KAAD. And even if she had, T-Mobile has supplied a legitimate nondiscriminatory explanation for her termination, and plaintiff hasn't adduced any admissible evidence that could support a finding that T-Mobile's explanation is just pretext for unlawful discrimination. This entitles T-Mobile to summary judgment and the court grants it against plaintiff's KAAD claim.

### 4. Plaintiff's Claims Under the Fair Labor Standards Act

"Plaintiff also asserts a Fair Labor Standard Act ("FLSA") claim on the basis that the defendant interfered with the plaintiff's disability payments, which was a direct substitute of Plaintiff's potential work earnings while on a leave of absence, and her pay was inaccurate." Doc. 77 at 3 (Pretrial Order); *see also* Doc. 36 at 4 (Am. Compl.) ("My Taxes, Wages, and deductions were discriminated against, the last paycheck is inaccurate with W2 tax filing for 2018."). Beyond these details, plaintiff's FLSA claim is incomprehensible.

The FLSA, 29 U.S.C. §§ 201–219, is designed to protect employees in the workforce by requiring their employers to follow certain rules for how they run their business and treat their staff. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition . . . that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts . . . which endangered national health and efficiency and as a result the free movement of goods in interstate commerce."). Employees can sue their employer under the FLSA to recover damages for unpaid minimum wages or overtime pay. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013); *see also* 29 U.S.C. §§ 206, 207, 216(b). Employers must make, keep, and preserve specific employment-related records, including records of their

employees and their wages, hours, and other conditions and practices of employment.  *See* 29

U.S.C. § 211(c).

In a FLSA action, the "employee bears the burden of proving [she] performed work for

which [she] was not properly compensated."  *Donovan v. Simmons Petroleum Corp.*, 725 F.2d

83, 85 (10th Cir. 1983) (citation omitted).  "[A]n employee carries [her] burden by proving that

[she] has in fact performed work for which [she] was improperly compensated" and may do so

by producing "sufficient evidence to show the amount and extent of that work as a matter of just

and reasonable inference."  *Id.* (citation and internal quotation marks omitted).  If plaintiff makes

this showing, "the burden shifts to the employer to produce evidence of the precise amount of

work performed or to negate the reasonableness of the inference drawn from the employee's

evidence."  *Id.*  If the employer fails to do so, "damages may be awarded even though the result

is only approximate."  *Id.*

Defendant questions whether plaintiff's claim even falls within the FLSA's protections.

Doc. 79 at 11 ("At the outset, it does not appear plaintiff is actually claiming that she was not

properly compensated for all hours worked during her active employment with T-Mobile.").

Instead, T-Mobile argues, plaintiff's allegation involves disability benefits and therefore

summons a different federal law:  the Employee Retirement Income Security Act (ERISA).  *Id.*

(citing *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004)).  It's difficult to discern plaintiff's

claim because her allegations are unclear.  *See* Doc. 81-1 at 8–9.  But, the Pretrial Order explains

more clearly that plaintiff seems to view the issue of disability benefits and wages as

interrelated—*i.e.*, that plaintiff's disability benefits functioned effectively as a "substitute" for

"potential work earnings" while plaintiff took her leave of absence.  Doc. 77 at 3 (Pretrial

Order).  Here, the court concludes that T-Mobile deserves summary judgment against plaintiff's FLSA claim for two reasons.

*First*, plaintiff may have viewed her disability benefits as equivalent to wages she would've otherwise earned while working—in a functional sense—but federal law draws a meaningful distinction that forecloses her logic legally.  *See Aetna Health, Inc.*, 542 U.S. 200 at 208 ("Congress enacted ERISA to 'protect . . . the interests of participants in employee *benefit plans* and their beneficiaries' by setting out substantive regulatory requirements for employee *benefit plans*[.]" (quoting 29 U.S.C. § 1001(b))) (emphasis added).  Plaintiff does not have a cause of action under the FLSA for a claim based on disability payments.  For that kind of concern, she must invoke ERISA.

*Second*, T-Mobile has provided uncontroverted "evidence of the precise amount of work performed[.]"  *Donovan*, 725 F.2d at 85; *see also* Doc. 78-1 at 5 (Davis Decl. II ¶¶ 19–21), Doc. 78-1 at 27–34 (Ex. 8), Doc. 78-1 at 36–84 (Ex. 9).  So, even if plaintiff had satisfied her initial burden under the FLSA—and she hasn't—defendant's evidence "negate[s] the reasonableness" of any inference favoring plaintiff that might have existed.  *Donovan*, 725 F.2d at 85.  In sum, plaintiff bore the burden of "proving that [she] has in fact performed work for which [she] was improperly compensated[.]"  *Donovan*, 725 F.2d at 85 (citation and internal quotation marks omitted).  T-Mobile adduced admissible evidence demonstrating that it paid plaintiff for her labor, plaintiff hasn't brought forth any admissible evidence to the contrary.

Yet again, plaintiff hasn't raised any "genuine dispute as to any material fact" which means "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  T-Mobile thus deserves summary judgment against plaintiff's FLSA claim.

**IV.     Conclusion**

Plaintiff hasn't discharged her summary judgment burden.  Meanwhile, T-Mobile has adduced admissible evidence showing its decision to terminate plaintiff was based on legitimate, nondiscriminatory reason:  job abandonment.  The upshot from the preceding analysis is that T-Mobile therefore is entitled to summary judgment against all of plaintiff's claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Strike Plaintiff's Surreplies to Motion for Summary Judgment (Doc. 87) is granted.

**IT IS FURTHER ORDERED THAT** defendant's Motion for Summary Judgment (Doc. 78) is granted.  The court directs the Clerk of Court, consistent with this Memorandum and Order, to enter judgment in defendant's favor on all claims and close the case.

**IT IS SO ORDERED.**

**Dated this 1st day of June, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
